STATE v. R. F. RICE.

(Filed 10 April, 1912.)

1. Statutes — Cities and Towns—Health Ordinances—Extraterritorial Effect—Constitutional Law.

A legislative act is constitutional and valid which confers the exercise of police powers, for sanitary purposes, etc., upon an incorporated city and town, to be operative by ordinances within the corporate limits and to a distance of one mile in all directions beyond them.

2. Same—Hogs or Pigs.

When by legislative enactment it is provided that all ordinances of a certain city passed "in the exercise of police powers given to it for sanitary purposes, etc., shall apply to territory outside of the city limits within one mile of the same in all directions," the city may pass a valid ordinance making it an offense for "any person, firm, or corporation to keep any hogs or pigs within the corporate limits," or within "one-fourth of a mile" beyond them.

3. Cities and Towns—Health Ordinances—Extraterritorial Effect—Commission Government.

The extraterritorial effect of an ordinance of a city relative to the health of its citizens depends upon the legislative authority conferred, and the validity of such an ordinance is not affected by the fact that the city is under a Commission form of government, with the "initiative, referendum, and recall."

4. Cities and Towns—Health Ordinances—Extraterritorial Effect—Legislature—Municipal Discretion—Courts.

From the operation of an ordinance prohibiting the keeping of hogs and pigs within the corporate limits of an incorporated town and beyond to the extent of one-fourth of a mile in all directions, passed under a legislative act conferring upon the town the authority to make sanitary ordinances applicable to the extent of one mile beyond its limits, an appeal should be made either to the proper authorities of the city or to the Legislature, for upon its reasonableness or unreasonableness when so authorized by the Legislature the courts are without authority to act.

5. Cities and Towns—Health Ordinances—Hogs or Pigs—Indictment.

When a valid ordinance of a city forbids "keeping any hogs or pigs within the corporate limits or within one-fourth of a mile of said limits," a warrant following the language of the ordi-

nance is sufficient; and the offense is indictable without reference to the number of hogs or pigs, the condition or size of the pens or inclosures where they are kept. The advantages or benefits of sanitary laws discussed by CLARK, C. J.

WALKER and ALLEN, JJ., dissenting.

APPEAL from *Cook, J.,* at February Term, 1912, of GUILFORD. The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General and A. Wayland Cooke for the State.*
*Sapp & Williams for defendant.*

CLARK, C. J. The defendant, who lives outside the corporate limits of Greensboro, was indicted in the Municipal court of the city of Greensboro for unlawfully and willfully "keeping and running hogs in a lot within one-fourth of a mile of the corporate limits of the city of Greensboro," in violation of the city ordinance which is set out and which provides: "It shall be unlawful for any person, firm, or corporation to keep any hogs or pigs within the corporate limits of the city of Greensboro or within one-fourth of a mile of said limits."

On appeal from the Municipal court the warrant was quashed, and the State appealed.

The General Assembly provides in the charter of Greensboro, Private Laws 1911, ch. 2, sec. 27, that all ordinances of the city of Greensboro enacted "in the exercise of police powers given to it for sanitary purposes or for the protection of the property of the city, shall apply to the territory outside of said city limits within one mile of same in all directions."

The Legislature has unquestioned authority to confer upon the town authorities jurisdiction for sanitary or police purposes of territory beyond the city limits. 28 Cyc., 704, 20 A. and E. Enc., 1148, and cases there cited. This is sometimes conferred for police protection, but oftener for the preservation of public health. Power is often granted to the town authorities to police the watershed beyond corporate limits so that the city may have pure water. Also, to insure cleanliness, to protect the sewerage, and for many like purposes to protect the health of those living within the city. Among the most notable cases

are *Van Hook v. Selma,* 70 Ala., 361; *Chicago Packing Co. v. Chicago,* 88 Ill., 221; *Emerich v. Indianapolis,* 18 Ind., 279; *Albia v. O'Hara,* 64 Iowa, 297; *S. v. Franklin,* 40 Kansas, 410; *Jordan v. Evansville,* 163 Ind., 512.

There are many other cases to like effect and none to the contrary. Among the late cases are *Gower v. Agee,* 128 Mo. App., 427; *Ex parte Glass,* 49 Tex. Cr., 87. In this last case the Court sustained an ordinance forbidding the keeping of hogs within one mile of the courthouse. The Court held that this was a matter within the discretion of the town commissioners, though it permitted hogs to be kept at places within town limits beyond that distance from the courthouse. In 2 Abbott Mun. Corp., sec. 562, it is said: "It is of course within the power of the State Legislature to authorize a town to pass ordinances which shall have a restricted effect beyond their limits." In *Chicago Packing Co. v. Chicago, supra,* the Court said: "Persons desiring to engage in particular avocations in or near cities must submit to have their pursuits limited and controlled at least so far as the preservation of health and to a reasonable extent the comfort of the people may require. . . . The lives, the health, and comfort of the people are the highest claim and demand the first and greatest protection. . . . They have the right to be protected against all kinds of business that endanger life and health and from intolerant nuisances that destroy their comfort. To accomplish this purpose, the power was conferred upon cities and villages to regulate these establishments for the distance of one mile beyond their corporate limits, even if that shall lap over and embrace a portion of territory included in the boundaries of another municipality. Each, to that extent, has the right to protect its inhabitants, and such establishments, located in such territory, are subject to the police power of both corporate bodies." The ordinance there sustained was for the regulation of the great packing houses located outside of Chicago and which had been licensed by a neighboring town.

The argument that the town of Greensboro is governed under the Commission form of government, with "initiative, referendum, and recall," and therefore that its municipal authorities

should have no control outside of the city limits, is wanting in application. The question is not how the city authorities are chosen, but what power the Legislature has conferred upon them over adjacent districts beyond the city limits in which may be set up establishments, business, or other things which would be injurious to the health of its people. There is nothing in our Constitution which restricts the Legislature in the exercise of its police power from conferring upon the municipal authorities of Greensboro such power. Indeed, the Municipal court of Greensboro is given jurisdiction outside the city limits and such jurisdiction has been affirmed at this term in *S. v. Brown,* citing *S. v. Shine,* 149 N. C., 480; *S. v. Baskerville,* 141 N. C., 811, and divers other cases.

The city, therefore, had the same power to pass this ordinance and make it applicable to a district within a quarter of a mile outside the city limits as it had to prohibit "keeping any hogs or pigs within the corporate limits." The question, therefore, is whether it could pass such ordinance applicable within the city limits. In *S. v. Hord,* 122 N. C., 1093, the Court held that the town authorities could forbid keeping a hogpen within the city limits. In that case the prohibition was against keeping a hogpen within 100 yards of the residence of another, which was, of course, practically an entire prohibition. In 2 Dillon Mun. Corp. it is said that "The keeping of hogs and swine is a generally recognized subject of regulation of municipal ordinance." In *Darlington v. Ward,* 48 S. C., 570; 38 L. R. A., 326, it is said: "An ordinance cannot be held invalid because it is unreasonable when the power to pass the ordinances on the subject is conferred by a constitutional statute." It is further held: "An ordinance making it unlawful to keep any hogs within the corporate limits of the town cannot be held void." In *Skaggs v. Martinsville,* 140 Ind., 476; 33 L. R. A., 781, the Court held it would not "inquire as to the reasonableness of an ordinance when the power exists to pass it." The same was held in the late case of *Brunson v. Youmans* (S. C.), 56 S. E., 561, in which the Court sustained a town ordinance which made it "unlawful to keep any hogs within the town," citing *Darlington v. Ward, supra.* Ordinances to prohibit hogs within a town have also been sustained in *Quincy v. Kennard,* 151 Mass., 563;

*Smith v. Collier,* 118 Ga., 417; *Ex parte Glass,* 49 Tex. Cr., 87.

Even if this Court were of opinion that the ordinance is not sound public policy and might work hardship, we could not declare it invalid. The Legislature has conferred jurisdiction upon the town commissioners "to make such rules and regulations, not inconsistent with the Constitution and laws of the State, for the preservation of the health of the inhabitants of the city as to them may seem right." Private Laws 1911, ch. 2, sec. 17. An appeal in such case must be to the lawmaking power. *Red "C" Oil Co. v. Board of Agriculture,* 222 U. S., 380, decided January, 1912. But as a matter of fact, there are some 20,000 people within the limits of the town of Greensboro and they have a right to be protected against such matters as their local Legislature may deem unsanitary. If that body is wrong, it will be influenced by their constituents to repeal or modify the ordinance. But the authority to make the ordinance and to extend its limits, not to exceed one mile, beyond the city boundaries has been conferred by the Legislature. Of their own volition the city authorities made the ordinance applicable only to the extent of one-quarter of a mile beyond the city boundaries.

The language of the ordinance forbids "keeping any hogs or pigs within the corporate limits of the city of Greensboro or within one-fourth of a mile of said limits." The warrant charges that the defendant "did unlawfully and willfully keep and run hogs in a lot within one-fourth of a mile of the corporate limits of the city of Greensboro." It therefore comes within the terms of the ordinance. It does not appear what size the lot was, nor is it material. The ordinance prohibits "keeping hogs" within the limits named. In *Darlington v. Ward,* 48 S. C., 570, there was a single hog kept within a two-acre lot. The Court held that the question was not whether the keeping of that particular hog was injurious to the health of the town, but whether the town had authority to prohibit the "keeping of hogs" within the limits prescribed and whether the defendant had violated that ordinance. The Court said that the nature and condition of the premises were immaterial and that "the power of the town council to preserve the public health cannot be measured by the size of Ward's lot" nor by the cleanly condition in which he kept his

premises. The Court further said: "Courts cannot run a race of opinion upon points of right, reason, and expediency against the lawmaking power. No act of the Legislature can be declared void or unconstitutional unless it conflicts with some provision of the Constitution. Nor can any ordinance of any municipal corporation within the power conferred by the Legislature, and not in conflict with the laws and Constitution of the State, be impeached in a court for unreasonableness. A critical examination of cases holding police regulations void, because unreasonable, will disclose that the attempted police regulations violated some constitutional guaranty. The right asserted by some courts to declare municipal ordinances invalid because unreasonable is limited to ordinances passed under the implied or incidental powers of the municipality."

The greatest advance of the age probably is towards the preservation of the public health and in measures for the prevention of disease. The Legislature conferred power upon the municipal authorities of Greensboro to adopt sanitary regulations. In passing this ordinance they acted within this authority, and doubtless upon the advice of the sanitary board.

The necessity and the benefit of sanitation cannot be better shown than by a statement which recently appeared in a Government publication that in Cuba, a tropical country, under the impetus given by United States supervision, there is an expenditure now of 46 cents *per capita* for better sanitation and an annual mortality of 15 per 1,000 of the population, while in North Carolina, in naturally a healthy climate, there is an expenditure of only 1 cent per capita and a mortality of 18.3 per thousand of population, or 22 per cent greater. In view of such fact, the courts will be slow to interfere with sanitary regulations which have been adopted by city authorities, presumably in accordance with the wishes of the most intelligent and advanced portion of its population, even if we possessed the power to interfere. It is not our province to review the action of boards of sanitation, within the limits of their powers. The judgment quashing the warrant is

Reversed.

WALKER and ALLEN, JJ., dissenting.