LOUISE LASSITER v. NORTHAMPTON COUNTY BOARD OF ELECTIONS

(Filed 9 April, 1958)

**1. Constitutional Law § 3—**

Where a constitutional amendment stipulates that its provisions should be indivisible and that the whole of the amendment should stand or fall together, the adoption of a subsequent amendment, predicated upon the original amendment as amended, substituting one new section and containing language implicitly recognizing the other sections of the article as then written, has the effect of incorporating and adopting anew the other sections and provisions of the articles as then appeared, freed of the indivisibility clause of the original amendment.

**2. Constitutional Law § 2—**

Our State Constitution is a limitation and not a grant of power, and the General Assembly has all political power not prohibited it by the Constitution.

**3. Constitutional Law § 20:	Elections § 2c—**

The provisions of G.S. 163-28 requiring all persons applying for registration to be able to read and write any section of the Constitution as an educational qualification to the right to vote, is authorized by Article VI of the State Constitution, and, since it applies alike to all persons who present themselves for registration to vote, it makes no discrimination based on race, creed or color, and therefore does not conflict with the 14th, 15th or 17th Amendments to the Constitution of the United States.

APPEAL by plaintiff from *Paul, J.*, at August 1957 Term, of NORTH-AMPTON.

Civil proceeding predicated upon denial by the Registrar of Seaboard Voting Precinct, Northampton County, North Carolina, of application of plaintiff, Louise Lassiter, 41 years of age, for registration as a voter in said precinct for the reason that she, the plaintiff, failed to submit to an educational test required by General Statute 163-28 amended, of the State of North Carolina.

Counsel for petitioner and counsel for respondents, being of opinion that the resolution of this controversy depends upon a question of law, and, having waived a jury trial in the cause, consented that the court might hear and resolve said matter upon an agreed statement of facts, stipulate the following:

"1. That the petitioner herein, to wit, Louise Lassiter, is a Negro, is now a resident of Seaboard Voting Precinct of Northampton County, North Carolina, has been such resident continuously for more than 18 years, and was such resident on the 22nd day of June, 1957.

"2. That the said Louise Lassiter is of voting age, to wit, being more than 21 years of age and that she was of such voting age on and before the said 22nd day of June, 1957.

"3. That the said Louise Lassiter is not now one of the persons excluded from eligibility to register and vote within the contemplation, meaning and intent of Section 163-24, of General Statutes of North Carolina, and was not on the 22nd day of June, 1957, within any of the categories of persons excluded from registration and voting by said statute.

"4. That the said Louise Lassiter, by virtue of her continuous residence in and claim of continuous residence in the aforesaid Seaboard Precinct, Northampton County, North Carolina, is not eligible to register as a voter in any other precinct in the State of North Carolina.

"5. That the said Louise Lassiter is not now registered and never has been registered as a voter for the purpose of voting in the said Seaboard Precinct, nor in any other voting precinct within the State of North Carolina, nor in any other town, city or State.

"6. That on the 22nd day of June, 1957, the said Louise Lassiter, in due and normal course and within the hour limits prescribed, presented herself to the duly appointed and acting registrar of the said Sea-Board Precinct, to wit, Mrs. Helen H. Taylor, and requested to be registered as a voter for and in a special election scheduled to be held on July 13, 1957, for the voting citizens of Northampton County.

"7. That upon presenting herself to the said registrar, the said Louise Lassiter subscribed to the oath generally and usually required of applicants for registration.

"8. That following the taking of and subscribing to said oath the said registrar, to wit, Mrs. Helen H. Taylor, presented to the said Louise Lassiter a printed copy of the Constitution of the State of North Carolina and requested and required of the said Louise Lassiter that she read certain designated sections thereof.

"9. That the said Louise Lassiter declined and refused to read the proffered sections of the said Constitution, or any other section thereof, as a prerequisite to her being registered as a voter, for that the said Louise Lassiter contended and asserted and still contends and asserts that such requirement of reading said Constitution was and is unlawful, the same being in violation of the Constitution and laws of the State of North Carolina, and the Constitution and laws of the United States.

"10. That the said registrar, to wit, Mrs. Helen H. Taylor, upon the declining and refusing of the said Louise Lassiter to read the proffered sections of the Constitution of North Carolina, then and there refused to register and did not register the said Louise Lassiter

upon the ground that she, the said Louise Lassiter, failed to meet one of the prerequisites for registration, namely, reading any section of the Constitution of North Carolina in the English language.

"11. That on the same day of refusal of registration to her, upon the ground hereinbefore set forth, to wit, on the 22nd day of June, 1957, the said Louise Lassiter gave written notice to the said registrar of appeal from said denial of registration by said registrar to the Board of Elections of Northampton County.

"12. That on the 28th day of June, 1957, the appeal of the said Louise Lassiter from the denial of registration by the aforesaid registrar was heard by and before the Board of Elections of Northampton County, sitting and convened as a body and administrative board in the Courthouse building of Northampton County, in Jackson, North Carolina.

"13. That the said Board of Elections of Northampton County, being duly constituted and convened, as aforesaid, heard and entertained the aforesaid appeal of the said Louise Lassiter *de novo*.

"14. That in said hearing and as a part of said hearing to determine the eligibility of the said Louise Lassiter to register as a voter, the said Board of Elections requested of the said Louise Lassiter that she read certain designated sections of the Constitution of North Carolina from a printed copy of said Constitution supplied her.

"15. That the said Louise Lassiter declined and refused the said Board's request and requirement that she read the proffered sections of said Constitution, or any other section thereof, as a prerequisite to her being registered as a voter, for that the said Louise Lassiter contended and asserted and still contends and asserts that such requirement of reading said Constitution was and is unlawful, and the same being in violation of the Constitution and the laws of the State of North Carolina, and the Constitution and laws of the United States.

"16. That the said Board of Elections, upon the said Louise Lassiter's failing and refusing to read the proffered sections of the said Constitution, or any other sections thereof, issued a written order and directed that the said Louise Lassiter be denied registration as a voter in the Seaboard Precinct, upon the ground that she, the said Louise Lassiter, failed to meet one of the prerequisites for registration, namely, reading any section of the Constitution of North Carolina in the English language.

"17. That on the 28th day of June, 1957, the said Louise Lassiter filed and caused to be filed with the Board of Elections of Northampton County a written notice of appeal from said Board's denial of registration as a voter to the Superior Court of Northampton County.

"18. That on the 5th day of July, 1957, the appeal of the said Louise Lassiter from the said Board in said matter to the aforesaid Superior Court was docketed in said Superior Court.

"19. That the said Louise Lassiter, because of her lack of educational qualifications, on June 22, 1957, and continuously since said date until the present date, is unable to and has failed and refused to write or read, or attempt to write or read, any section of the Constitution of North Carolina, or any section of the Constitution of the United States in the English language.

"20. That aside from her failure, refusal and inability to read or write any section or sections of the Constitution of North Carolina, or any section or sections of the Constitution of the United States in the English language, the said Louise Lassiter meets the other statutory qualifications for eligibility to be registered as a voter in Seaboard Precinct, Northampton County, North Carolina.

"21. That this cause is duly before the Superior Court of Northampton County at this term in conformity with Chapter 163 of the General Statutes of North Carolina for trial or hearing and decision of the matters herein involved."

Upon these stipulations and applicable law petitioner through her counsel moved the court for directed verdict and finding in her favor. The motion was denied.

Petitioner through her counsel then made special request that the court make and enter the following finding of fact and conclusions of law, to wit:

## "FINDING OF FACT

"That the Registrar of Seaboard Precinct of Northampton County and the Board of Elections of Northampton County failed and refused to register petitioner Louise Lassiter as a qualified voter upon the ground that the said Louise Lassiter failed and refused to read or write any section of the Constitution of North Carolina, as required by North Carolina General Statutes, Section 163-28, as amended.

## "CONCLUSIONS OF LAW

"1. That the requirement by the Registrar of Seaboard Precinct and by the Northampton County Board of Elections, in application of the provision of Section 163-28 of General Statutes of North Carolina, as amended, that the said Louise Lassiter be able to read or write any section of the Constitution of North Carolina, as a prerequisite to being registered as a qualified voter is unlawful, the same being in violation of Article VI, Section I of the Constitution of North Carolina, and in violation of the 14th, 15th, and 17th Amendments to the Constitution of the United States.

"2. That the said Louise Lassiter is entitled to be registered as a qualified voter in Seaboard Precinct of Northampton County free of and without regard to any requirement of reading or writing any section of the Constitution of North Carolina as a prerequisite to such registration."

This special request for finding of fact and conclusions of law was denied.

Thereupon, Judge Paul, presiding at August 1957 Term, entered judgment in which it appears that "After reading and considering the agreed facts, and after hearing argument of counsel for the plaintiff and the defendant, the court is of the opinion that under said agreed facts plaintiff is not entitled to be registered as a qualified voter in Seaboard Township, Northampton County, North Carolina, for that said plaintiff does not meet the requirements of Chapter 163, Section 28, of the General Statutes of North Carolina" and "it is therefore ordered, adjudged and decreed that plaintiff is not entitled to be registered as a qualified voter in Seaboard Precinct, Northampton County, North Carolina, and that plaintiff's prayer for relief as set out in her notice of appeal to this court be, and the same is hereby denied * *.*."

To the entry and signing of the foregoing judgment, plaintiff excepts and assigns a group of exceptions, and appeals to the Supreme Court of North Carolina, and assigns error.

*Taylor & Mitchell, James R. Walker, Jr., for plaintiff, appellant.*
*E. N. Riddle, Fletcher & Lake, for defendant, appellee.*
*Attorney General Patton, Assistant Attorney General Ralph Moody,*
*Amicus Curiae*

WINBORNE, C. J.   The immediate question on this appeal is this: Is plaintiff, upon the agreed statement of facts, entitled to register for voting without meeting the test of reading and writing any section of the Constitution of North Carolina in the English language, as required by General Statutes 163-28 as amended? The trial court was of opinion that plaintiff is not so entitled to register. This Court concurs in this ruling.

General Statutes 163-28 as amended by 1957 Session Laws of North Carolina, Chapter 287, Section 1, effective 12 April, 1957, under caption "Voters must be able to read and write; registrar to administer section," declares that "Every person presenting himself for registration shall be able to read and write any section of the Constitution of North Carolina in the English language," and that "it shall be the duty of each registrar to administer the provisions of this section."

And in the same act, 1957 Session Laws, Chapter 287, the General Assembly of North Carolina made provision (1) for appeal to County Board of Elections from registrar's denial of registration, G.S. 163-28.1; (2) for hearing *de novo* upon such appeal before County Board of Elections, G.S. 163-28-2; (3) appeal from judgment of County Board of Elections to Superior Court, and hearing thereon; and (4) appeal from judgment of Superior Court to Supreme Court, G.S. 163-28.3.

The plaintiff applied for registration and refused to submit to, and qualify for the educational test—that is, either to read or write any section of the Constitution of North Carolina as related in the foregoing stipulation of facts. And for this reason, and this reason alone, she was not admitted to registration.

At the outset she contends that the above provisions of G.S. 163-28 are unconstitutional by reason of conflict with the suffrage provisions of the Constitution of North Carolina.

In this connection it is appropriate to trace the history of Article VI, of the Constitution of North Carolina, omitting sections not necessary to inquiry in hand.

Beginning with the Constitution of the State of North Carolina "done in convention at Raleigh, the sixteenth day of March in the year of our Lord one thousand eight hundred and sixty-eight, and of the Independence of the United States the ninety-second," the pertinent provision as to "suffrage and eligibility to office" is contained in Article VI, as amended by the Constitutional Convention of 1875, to read as follows:

"Section 1. Every male person, born in the United States, and every male person who has been naturalized, twenty-one years old or upward, who shall have resided in the State twelve months next preceding the election, and ninety days in the county in which he offers to vote, shall be deemed an elector. But no person, who upon conviction or confession in open court, shall be adjudged guilty of a felony or of any other crime infamous by the laws of this State, and hereafter committed, shall be deemed an elector, unless such person shall be restored to the rights of citizenship in a manner prescribed by law.

"Sec. 2. Registration of Electors: It shall be the duty of the General Assembly to provide, from time to time, for the registration of all electors, and no person shall be allowed to vote without registration, or to register, without first taking an oath or affirmation to support and maintain the Constitution and laws of the United States, and the Constitution and laws of North Carolina not inconsistent therewith * * *."

Thereafter the General Assembly of 1899 passed an act entitled

"An Act to Amend the Constitution of North Carolina," P.L. 1899, Chapter 218, abrogating Article Six of the Constitution of North Carolina, and proposing a substitute thereof, to be submitted at the next general election on May 1, 1899, but it was not so submitted. However, the General Assembly, at its adjourned session of 1900, passed another act, Chapter 2, Laws of Adjourned Session 1900, entitled "An Act Supplemental to an Act entitled 'An Act to Amend the Constitution of North Carolina,' ratified February twenty-first, eighteen hundred and ninety-nine, the same being Chapter two hundred eighteen of the Public Laws of eighteen hundred and ninety-nine" reading as follows:

"The General Assembly of North Carolina do enact:

"Section 1. That Chapter 218, Public Laws of 1899 entitled 'An Act to Amend the Constitution of North Carolina,' be amended so as to make said act read as follows: 'That Article Six of the Constitution of North Carolina be and the same is hereby abrogated, and in lieu thereof shall be substituted the following Article of the Constitution as an entire and indivisible plan of suffrage,

'Article VI

'Suffrage and Eligibility to Office

'(Section 1) Every male person born in the United States, and every male person who has been naturalized, twenty-one years of age, and possessing the qualifications set out in this Article, shall be entitled to vote at any election by the people of the State, except as herein otherwise provided.

'(Sec. 2) He shall have resided in the State of North Carolina for two years, in the county six months, and in the precinct, ward, or other election district, in which he offers to vote, four months next preceding the election: Provided, that removal from one precinct, ward, or other election district, to another in the same county, shall not operate to deprive any person of the right to vote in the precinct, ward or other election district from which he has removed until four months after such removal. No person who has been convicted or who has confessed his guilt in open court upon indictment, of any crime, the punishment of which now is, or may hereafter be, imprisonment in the State's Prison, shall be permitted to vote, unless the said person shall be first restored to citizenship in the manner prescribed by law.

'(Sec. 3) Every person offering to vote shall be at the time a legally registered voter as herein prescribed, and in the manner provided by law, and the General Assembly of North Carolina shall enact general registration laws to carry into effect the provisions of this Article.

'(Sec. 4) Every person presenting himself for registration shall be able to read and write any section of the Constitution in the English

language; and before he shall be entitled to vote, he shall have paid on or before the first day of May, of the year in which he proposes to vote, his poll tax for the previous year, as prescribed in Article V, Section 1, of the Constitution. But no male person, who was, on January 1, 1867, or at any time prior thereto, entitled to vote under the laws of any State in the United States wherein he then resided, and no lineal descendant of any such person shall be denied the right to register and vote at any election in this State by reason of his failure to possess the educational qualifications herein prescribed: Provided, he shall have registered in accordance with the terms of this section prior to December 1, 1908.

'The General Assembly shall provide for the registration of all persons entitled to vote without the educational qualifications herein prescribed, and shall, on or before November 1, 1908, provide for the making of a permanent record of such registration, and all persons so registered shall forever thereafter have the right to vote in all elections by the people of this State, unless disqualified under Section 2 of this Article: Provided, such person shall have paid his poll tax as above required.

'(Sec. 5) That this amendment to the Constitution is presented and adopted as one indivisible plan for the regulation of the suffrage, with the intent and purpose to so connect the different parts, and to make them so dependent upon each other, that the whole shall stand or fall together * * * .' "

Section 9 declares that if a majority of votes be cast at the next general election in favor of this suffrage amendment, it shall go into effect on July 1, 1902.

And machinery is provided for submitting the question to a vote of the people, and for determining and declaring the result of the election, and the certification and enrollment of the amendment among the permanent records of the office of Secretary of State.

The act was in force from and after ratification—June 13, 1900.

The amendment to the Constitution was submitted to and approved by the qualified voters of the State at the next general election, and became Article VI of the State Constitution, and enrolled as required January 25, 1901.

Since the adoption of amendment last above mentioned, Article VI of the Constitution has been amended as follows:

(1) The next General Assembly at its 1919 session, passed an act, Chapter 129, entitled "An Act to Amend the Constitution of the State of North Carolina," which amended Sections 2 and 4 of Article VI as follows: "IV. By striking out the first sentence of Section 2 of Article VI, and substituting therefor the following: 'He shall reside in the

State of North Carolina for one year and in the precinct, ward or other election district in which he offers to vote, four months next preceding the election,' " and

"V. By striking out of Section 4 of Article VI the following: 'And before he shall be entitled to vote he shall have paid, on or before the first day of May in the year in which he proposes to vote, his poll tax for the previous year as prescribed in Article V, Section 1, of the Constitution.' " And the act declared that amendments IV and V as just stated be considered as one amendment and submitted to the voters of the whole State at the next general election. However, this was not done. But at the extra session of 1920 the General Assembly passed Chapter 93 of the Public Laws of that session entitled: "An act to amend Chapter 129 of the Public Laws of 1919, and to further amend the Constitution of the State of North Carolina" as follows: "Section 1, Chapter 129 of Public Laws of 1919 be and the same is hereby amended so as to hereafter read as follows: 'Sec. 2. That the Constitution of the State of North Carolina be and the same is hereby amended in manner and form as follows * * * .'

"IV. By striking out that part of the first sentence of Section 2 of Article VI ending with the word 'election' before the word 'provided', and substituting therefor the following: 'He shall reside in the State of North Carolina for one year and in the precinct, ward or other election district in which he offers to vote, four months next preceding the election.'

"V. By abrogating the following requirement of Section Four of Article VI: 'And before he shall be entitled to vote he shall have paid, on or before the first day of May in the year in which he proposes to vote, his poll tax for the previous year as prescribed by Article Five, Section 1, of the Constitution' and by abrogating the following proviso at the end of Section Four, Article VI: 'Provided such person shall have paid his poll tax as above required.' "

Moreover, the act, Chapter 93, Public Laws Extra Session 1920, declared that these amendments IV and V be considered as one amendment and submitted to the qualified voters of the whole State at the next general election. This was done, and the amendments were adopted and then enrolled by the Secretary of State on January 8, 1921.

The next amendment was proposed by the General Assembly 1945 Session Laws, Chapter 634, as follows: "Sec. 2. That Section 1 of Article VI of the Constitution of the State of North Carolina be amended to read as follows: 'Section 1. Who May Vote. Every person born in the United States, and every person who has been naturalized, 21 years of age, and possessing the qualifications set out in this Article, shall be entitled to vote at any election by the people of the State, ex-

cept as herein otherwise provided.'" This act repeals all laws and clauses of laws in conflict with its provisions. And the General Assembly authorized the submission of the amendment to the qualified voters of the State in the next general election. This was done, and the amendment was adopted, and then enrolled by the Secretary of State on December 10, 1946.

Lastly, the General Assembly at its 1953 session, Chapter 972, passed an act, the terms of which re-wrote the first sentence Section 2 of Article VI, so as to reduce the length of residence for voting in a voting precinct. And this was submitted to the qualified voters of the entire State at the 1954 general election and adopted, and then enrolled December 8, 1954.

Otherwise Article VI remained as adopted in 1902, as above recited.

The appellant contends that the indivisibility clause is a "built-in extinguishment of the entire 1902 amendment," and, that, as a result, the suffrage provisions are relegated to Article VI as it appears in the Constitution of 1868 as amended by the constitutional convention of 1875, and, hence, there is no constitutional authority for the General Assembly to enact G.S. 163-28. But attention is directed to the 1945 amendment for such authority.

In this connection we find in 16 CJS 67 Constitutional Law, Section 26, this pertinent declaration of principle: "As the latest expression of the will of the people a clause in a constitutional amendment will prevail over a provision of the Constitution or earlier amendment inconsistent therewith, for an amendment to the Constitution becomes a part of the fundamental law, and its operation and effect cannot be limited or controlled by previous constitutions or laws that may be in conflict with it."

So, irrespective of the questions now raised, as to the validity of the provisions of the 1902 amendment, and as to the effect thereof upon the provisions of Article VI of the Constitution of 1868 as amended by the Constitutional Convention of 1875, when the General Assembly came to consider the proposed amendment of 1945, Article VI then factually appeared intact and unchallenged. Therefore the provisions of the 1945 amendment must be considered in the light of this fact. Thus, when, as to who may vote, the General Assembly declared that "Every person born in the United States, and every person who has been naturalized, 21 years of age, and possessing the qualifications set out in this article shall be entitled to vote * * * ," the clause "possessing the qualifications set out in this article," was intended to mean, and was made certain by, the qualifications appearing upon the face of the Article VI, so unchallenged. And one of those qualifications was set forth in Section 4 of Article VI wherein it was

required that "Every person presenting himself for registration shall be able to read and write any section of the Constitution in the English language."

"In the absence of constitutional inhibition part or all of an existing statute may, by specific and descriptive reference thereto, be incorporated into another statute." 82 CJS 123, Statutes Sec. 70(b).

Indeed, under such circumstances, "the provisions of a law which lapsed or has been repealed may be made a part of a new statute by referring to the law in general terms and without incorporating such provisions at length; reference may be made to an act which is repealed and succeeded by the act making the reference for the purpose of adopting provisions of the succeeded act; and repealed acts, some of which are invalid, may be adopted by reference for purposes of identification. The validity of the referring act is unaffected when it is complete within itself when read in the light of the matter so identified," 82 CJS 124, Statutes Sec. 70(b).

And this Court in *Lutz Industries v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333, opinion by *Parker, J.*, declaring that "Unless prohibited by constitutional restrictions, reference statutes are frequently recognized as an approved method of legislation to avoid encumbering the statute books by unnecessary repetition," has applied the principle.

In this light, the 1945 amendment so proposed and later adopted had the effect of incorporating and adopting anew the provisions as to the qualifications required of a voter as set out in Article VI, freed of the indivisibility clause of the 1902 amendment. And the way was made clear for the General Assembly to act.

In this connection, a doctrine firmly established in the law is that a State Constitution is in no matter a grant of power. All power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it. 11 Am. Jur. 619—Constitutional Law.

The Constitution of North Carolina, Article 1, Sec. 2, declares: "All political power is vested in, and derived from the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."

Moreover, it is noted in *Guinn v. United States*, 238 US 347, 59 L.ED. 1340, that Chief Justice White of the Supreme Court of the United States, said: "No time need be spent on the question of the validity of the literacy test, considered alone, since as we have seen, its establishment was but the exercise by the State of a lawful power vested in it, not subject to our supervision, and, indeed, its validity is admitted. Whether this test is so connected with the other one re-

lating to the situation on January 1, 1866, that the validity of the latter requires the rejection of the former, is really a question of State law; but in the absence of any decision on the subject by the Supreme Court of the State, we must determine it for ourselves."

In this respect, the statute, then Section 5939 of Consolidated Statutes, later G.S. 163-28, was the subject of judicial interpretation by this Court, in the case of *Allison v. Sharp,* 209 N.C. 477, 184 S.E. 27, decided 26 February, 1936. And the Court, in opinion by Clarkson, J., held it to be constitutional.

And the provisions of G.S. 163-28 apply alike to all persons who present themselves for registration to vote. There is no discrimination in favor of, or against any by reason of race, creed, or color. Hence there is no conflict with either the 14th, 15th or 17th Amendments to the Constitution of the United States.

For reasons stated, the judgment from which appeal is taken is

Affirmed.