NEWBY, Justice.
In this case we consider whether the General Assembly may withdraw the previous extension of a town’s jurisdiction beyond its corporate limits and return governance to the county. The first clause of Article VII, Section 1 of our state constitution recognizes the historic plenary authority of the General Assembly to provide for the “organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions.” This language acknowledges the legislative power to organize local government and fix the jurisdictional boundaries. Extraterritorial jurisdiction affects the organization of local governmental subdivisions by extending a town’s jurisdiction into the county, thus shifting the political authority over certain subjects from one local government to another. Here, by withdrawing the Town of Boone’s extraterritorial jurisdiction, the legislature, restored the local jurisdictional boundaries as originally fixed, returning the governance of territory located outside of the Town limits to Watauga County. The limitations imposed by Article II, Section 24 do not apply to an action by the General Assembly establishing or modifying the jurisdictional boundaries of local governmental units. Because the legislative act withdrawing the Town’s extraterritorial jurisdiction falls squarely within this plenary power, we hold that the act is constitutional, and we reverse the decision of the trial court.
Historically, the General Assembly established the governmental jurisdiction of a municipality by fixing the municipality’s corporate limits. See State v. Eason, 114 N.C. 787, 795, 19 S.E. 88, 90 (1894) (“[T]he jurisdiction of a municipality does not extend beyond [its boundary], in the absence of some other language in the charter . . . .”). Beginning in the late 1800s, the General Assembly began to extend the jurisdiction of select municipalities beyond their corporate limits with regard to designated governmental functions. See id. at 792, 19 S.E. at 89 (“[T]he *128 legislature unquestionably ha[s] the power to extend the jurisdiction of the town, for police purposes . . . .”); see also, e.g., Act of Jan. 17, 1911, ch. 2, sec. 27, 1911 N.C. Priv. [Sess.] Laws 3, 17 (extending the City of Greensboro’s jurisdiction for sanitation and the protection of city property for one mile “outside of said city limits”). Each grant of extraterritorial authority was by local act on a city-by-city basis. Despite the growing usage of extraterritorial jurisdiction, the General Assembly precluded municipalities in Watauga County from governing extraterritorially. E.g., Act of May 26, 1955, ch. 1334, 1955 N.C. Sess. Laws 1387 (authorizing municipalities to regulate the subdivision of land within one mile of the corporate limits but excluding Watauga County and fifty-two other counties); see also Act of June 19, 1959, ch. 1204, sec. 1, 1959 N.C. Sess. Laws 1354, 1354 (expressly precluding towns located within Watauga County from governing extraterritorially). In 1961 the General Assembly granted extraterritorial jurisdictional authority to certain municipalities located within Watauga County, including the Town of Boone, over territory not more than one mile beyond their corporate limits. Act of May 30, 1961, ch. 548, sec. 1¾, 1961 N.C. Sess. Laws 748, 748. Article 19 of Chapter 160A of the General Statutes includes the current codification of extraterritorial jurisdiction.
For twenty years, the Town did not attempt to govern within the extraterritorial area. In 1981 the Town “initiate[d] the steps necessary to extend extraterritorial [jurisdiction] to [the] one mile perimeter” surrounding the Town and also sought “permission from the Watauga County Board of Commissioners to extend this radius to two miles.” See N.C.G.S. § 160A-360(a) (2015) (requiring approval from the county to extend jurisdiction beyond the one-mile perimeter).[1] When the County denied the Town’s request to exercise jurisdiction beyond the one-mile extraterritorial area, the Town adopted Ordinance 82-11 to exercise “[e]xtraterritorial zoning jurisdiction pursuant to [N.C.G.S. §] 160A-360” for five specified areas located within the permitted one-mile perimeter outside the Town limits. Boone, N.C., Ordinance 82-11 (Aug. 26,1982).[2]
*129 In 2014 the General Assembly withdrew extraterritorial jurisdiction from the Town and returned governance of the areas to the County. Act of June 26, 2014, ch. 33, sec. 1, 2013 N.C. Sess. Laws (Reg. Sess. 2014) 139, 140 (the Boone Act) (“Notwithstanding any other provision of law, the Town of Boone shall not exercise any powers of extraterritorial jurisdiction as provided in Article 19 of Chapter 160A of the General Statutes.”). The Boone Act effectively reorganized the specified local governmental jurisdictions within Watauga County by confining the Town’s jurisdictional reach to its corporate limits and restoring governance of the extraterritorial area to the County. See N.C.G.S. §§ 160A-360(a)-(b) (2015).
The Town filed its complaint, challenging the Boone Act as a facially unconstitutional local act prohibited by Article II, Section 24 of the North Carolina Constitution. The State unsuccessfully moved to dismiss the complaint and, in its answer, denied the Town’s allegations regarding the applicability of Article II, Section 24.[3] The County intervened, asserting its “special interest” in the action as a “property owner” and “the duly elected governing body for the citizens and residents residing within the former extraterritorial jurisdiction.”[4]
*130 A three-judge panel heard oral arguments and granted summary judgment in favor of the Town, concluding “that the revocation of the Town of Boone’s power of extraterritorial jurisdiction by [the Boone Act] is unconstitutional pursuant to the prohibition on local acts contained in Article II, Section 24” and enjoining its implementation. The State and the County appealed that decision under N.C.G.S. § 7A-27(al).
The State and the County argue that, under Article VII, Section 1 of the constitution, the legislature delegates to municipalities the authority to govern a particular territoiy and retains plenary power to modify the governance of that geographic territory. To hold otherwise would allow Article II, Section 24 to impermissibly restrict the General Assembly’s broad authority over municipalities as acknowledged by Article VII, Section 1. The Town responds that the Boone Act is a prohibited local act because it removes the authority of the Town to enforce its ordinances, some of which may “[r]elat[e] to health, sanitation, and the abatement of nuisances,” N.C. Const. art. II, § 24(1)(a), or “[r]egulat[e] labor, trade, mining, or manufacturing,” id. art. II, § 24(1)(j), and that the Act otherwise partially repeals N.C.G.S. § 160A-360, a general law, see id. art II, §24(2).
The analytical framework for reviewing a facial constitutional challenge is well-established. Our “State Constitution is in no matter a grant of power,” Lassiter v. Northampton Cty. Bd. of Elections, 248 N.C. 102, 112, 102 S.E.2d 853, 861 (1958), affd. 360 U.S. 45, 79 S. Ct. 985, 3 L. Ed. 2d 1072 (1959), and as such, “[a]ll power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it,” id. at 112, 102 S.E.2d at 861 (citation omitted). See also Slate ex rel. Ewart v. Jones, 116 N.C. 570, 570, 21 S.E. 787, 787 (1895) (“[P]ower resides with the people and is exercised by their representatives in the General Assembly.”). “We seldom uphold facial challenges because it is the role of the legislature, rather than this Court, to balance disparate interests and find a workable compromise among them.” Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm’rs, 363 N.C. 500, 502, 681 S.E.2d 278, 280 (2009) (citation omitted). An act of the General Assembly will be declared unconstitutional only when “it [is] plainly and clearly the case,” State ex rel. Martin v. Preston, 325 N.C. 438, 449, 385 S.E.2d 473, 478 (1989) (quoting Glenn v. Bd. of Educ., 210 N.C. 525, 529-30, 187 S.E. 781, 784 (1936)), and its unconstitutionality must be demonstrated beyond reasonable doubt, Baker v. Martin, 330 N.C. 331, 334-35, 410 S.E.2d 887, 889 (1991) (citations omitted).
*131 Though not expressly stated in our first constitution, the General Assembly has long enjoyed plenary power to create political subdivisions of local government, establish their jurisdictional boundaries, and invest them with certain powers, see Quality Built Homes Inc. v. Town of Carthage, _N.C. _, _, 789 S.E.2d 454, 457 (2016), which “may be enlarged, abridged or modified at the will of the legislature,” id. at _, 789 S.E.2d at 457 (quoting White v. Comm’rs of Chowan Cty., 90 N.C. 437, 438 (1884)). Our Constitution of 1868 affirmed “the duty of the Legislature to provide for the organization of cities, towns, and incorporated villages.” N.C. Const, of 1868, art. VIII, § 4. By 1876, following a brief suspension of “provisions relating to municipaljities]” during Reconstruction, see id., art. VII, § 12, the constitution reaffirmed that “[tjhe General Assembly shall have full power by statute to modify, change, or abrogate any and all of the provisions” pertaining to municipalities, id., Amends, of 1875, art. VII, § 14. See Journal of the Constitutional Convention of the State of North Carolina 162-63 (Raleigh, Josiah Turner 1875) (dismissing concerns that the 1875 amendment to Article VII would provide “unlimited control of the Legislature” over “the municipal government of cities, towns, &c.”).
Local political subdivisions are “mere instrumentalities of the State for the more convenient administration of local government,” Holmes v. City of Fayetteville, 197 N.C. 740, 746, 150 S.E. 624, 627 (1929), appeal dismissed per curiam, 281 U.S. 700, 50 S. Ct. 353, 74 L. Ed. 1126 (1930), whose territory and functions rest “in the absolute discretion of the state,” State ex rel. Dyer v. City of Leaksville, 275 N.C. 41, 50, 165 S.E.2d 201, 207 (1969) (quoting Hunter v. City of Pittsburgh, 207 U.S. 161, 178, 28 S. Ct. 40,46, 52 L. Ed. 151, 159 (1907)); accord Greensboro-High Point Airport Auth. v. Johnson, 226 N.C. 1, 9-10, 36 S.E.2d 803, 809 (1946). Under its plenary power, the General Assembly may create, organize, and abolish these local governmental units, arranging and rearranging local government to best meet the specific local needs of the people. See People ex rel. VanBokkelen v. Canaday, 73 N.C. 198, 222 (1875) (Political subdivisions “are parts and parcels of the State, organized for the convenience of local self-government.”); accord White, 90 N.C. at 438. Each locality presents different challenges and needs for the arrangement of local governmental units. The General Assembly is the only branch of government equipped to organize local government and, through oversight, craft responses to the changing needs of local communities.
As acknowledged by the case law, this broad power of the General Assembly has remained unchanged throughout our history and is recognized in Article VII, Section 1 of our current constitution, adopted in 1971:
*132 The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions, and, except as otherwise prohibited by this Constitution, may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable.
N.C. Const. art. VII, § 1. As such, Article VII, Section 1 “is not a delegation of power to the General Assembly” but “a general description” and “merely a recognition” of “the General Assembly’s power to provide for the organization and powers of local government,” Report of the North Carolina State Constitution Study Commission 85 (1968) [hereinafter 1968 Constitution Commission Report], as affirmed in the 1875 amendment, which “gave the General Assembly full power to revise or abolish the form and powers of county and township governments,” id. at 143.[6]
The text of the first clause of Article VII, Section 1, “[t]he General Assembly shall provide for the organization and government and the fixing of boundaries” of local governmental entities, mandates the statutory creation, structuring, restructuring, and defining of local governmental subdivisions and their jurisdictional boundaries. We look to the plain meaning of the phrase to ascertain its intent. State v. Webb, 358 N.C. 92, 97, 591 S.E.2d 505, 510-11 (2004) (The constitution is construed for its plain meaning.); see also Dunn v. Pac. Emp’rs Ins. Co., 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992) (Ordinary rules of grammar apply.). Each word informs a proper understanding of the-whole. “Organization” means something “put together into an orderly, functional, [and] structured whole.” Organize, The American Heritage Dictionary 926 (new coll. ed. 1979). “Government” is defined as “[t]he act or process of governing; especially, the administration of public policy in a political unit; *133 political jurisdiction.” Government, id. at 570. The “fixing of boundaries” means establishing borders or limits. See Fix and Boundary, id. at 497, 156. Thus, the plain meaning of the phrase “organization and government and fixing of boundaries” includes the designation and realignment of the political jurisdictions of local governmental units.
The General Assembly alone has the oversight responsibility and authority to define, limit, and expand the otherwise competing jurisdictions of local political subdivisions. See Hailey v. City of Winston-Salem, 196 N.C. 17, 22-23, 144 S.E. 377, 380 (1928) (“When a new governmental agency is established by the Legislature, such as a municipal corporation, it takes control of all the affairs over which it is given authority, to the exclusion of other governmental agencies.”).[6] Setting the jurisdictional boundaries of political subdivisions is left to legislative discretion.[7] Since the needs of each community differ, this Court has repeatedly acknowledged the practical reality that the General Assembly may exercise that discretion by local act.[8]
*134 The second clause of Article VII, Section 1 concerns the authority of the General Assembly to confer specific “powers and duties” on local governmental units. Unlike the first clause in Article VII, Section 1, the second clause includes an express limitation; namely, it prohibits any legislative delegation of “powers and duties” to local governmental units that is “otherwise prohibited by this Constitution.” Only under the second clause, then, is the General Assembly’s authority over local governments expressly subject to limitations imposed by other constitutional provisions, including the constraints on local acts in Article II, Section 24 first adopted in 1917. For example, under the Article II, Section 24 prohibition on certain local acts, the General Assembly cannot grant to one county the power to enact local employment legislation, see Williams v. Blue Cross Blue Shield of N.C., 357 N.C. 170, 191, 581 S.E.2d 415, 430 (2003), or remove a city’s power to enforce certain ordinances regarding specific properties within its municipal limits, see City of New Bern v. New Bern-Craven Cty. Bd. of Educ., 338 N.C. 430, 442, 450 S.E.2d 735, 742 (1994).[9]
*135 Acting under its plenary authority, the General Assembly creates municipalities. Historically, the municipality’s governmental authority ended at its corporate limits. The General Assembly first granted municipalities the authority to govern extraterritorially by amending municipal charters.[10] Even after the adoption of the restrictions on local acts, the legislature continued to delegate to select cities on an individual basis the authority to enforce more comprehensive zoning regulations within their one-mile perimeters.[11] Over time extraterritorial jurisdiction has become more common and the governmental authority expanded.[12]
At its essence, jurisdiction is “[a] government’s general power to exercise authority over all persons and things within its territory” or the “geographic area within which political... authority may be exercised.” Jurisdiction, Black’s Law Dictionary (10th ed. 2014). Extraterritorial jurisdiction extends the Town’s jurisdictional boundary, allowing the Town to impose certain ordinances—already applicable within its corporate limits—one mile into County territory without the County’s approval, thus superseding any County regulations on those same subjects. See N.C.G.S. § 160A-360 (2015); see also Trey Allen, Univ. of N.C. Sch. of Gov’t, General Ordinance Authority, in County and Municipal Government in North Carolina 77, 84 (Frayda S. Bluestein ed., 2d ed. 2014) (“A city may enforce zoning and other development ordinances inside its corporate limits and within its extraterritorial jurisdiction (ETJ).... When a city chooses to enforce development ordinances in its *136 ETJ, the county’s development ordinances no longer apply there ....”). Extraterritorial jurisdiction remains extraordinary because it broadens a municipality’s jurisdictional reach beyond its corporate limits. This extension of extraterritorial jurisdictional authority deprives the residents of the extraterritorial area of meaningful representation and the right to vote for local government representatives who shape policies affecting their property interests.[13] See Wesberry v. Sanders, 376 U.S. 1, 17, 84 S. Ct. 526, 535, 11 L. Ed. 2d 481, 492 (1964) (“No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.”).
The pivotal question before this Court is whether the Boone Act, which withdraws the Town’s extraterritorial jurisdiction, is an exercise of the General Assembly’s plenary authority to “provide for the organization and government and fixing of boundaries” of local government under the first clause of Article VII, Section 1. If so, our analysis ends, and there is no need to address the application of the second clause of Article VII, Section 1 and any restrictions imposed by Article II, Section 24.
Extraterritorial jurisdiction is inextricably tied to a municipality’s authority to enforce its zoning and development ordinances within certain geographic boundaries. By retracting the Town’s jurisdictional reach to its corporate limits, the Boone Act restores the local government boundaries within Watauga County as originally fixed. This local jurisdictional reorganization is precisely the type of “organization and government and fixing of boundaries” contemplated by the first clause of Article VII, Section 1 and historically approved by this Court. The Boone Act withdraws from the Town its extraterritorial jurisdiction and its governing authority to enforce certain ordinances within the one-mile perimeter and returns governance- of that territory to the County and its residents. The General Assembly is the only body politic uniquely qualified to oversee local government and set the jurisdictional lines that divide the Town and the County.
*137 Because the state constitution authorizes the General Assembly to reduce the Town’s jurisdictional reach, the removal of extraterritorial jurisdiction falls squarely within the legislature’s general power as described in the first clause of Article VH, Section 1. For the reasons stated above, the decision of the three-judge panel finding the Act unconstitutional is reversed.
REVERSED.

. Even when a municipality wishes to exercise extraterritorial jurisdiction in an area within one mile of its corporate limits, county approval is required if the county is already enforcing zoning ordinances, subdivision regulations, and the State Building Code in that area. N.C.G.S. § 160A-360(e) (2015).

. A municipality that wishes to exercise extraterritorial jurisdiction must specify by ordinance the areas to be included, defining the boundaries “to the extent feasible, in terms of geographical features identifiable on the ground.” N.C.G.S. § 160A-360(b) (2015). These boundaries must “at all times be drawn on a map, set forth in a written description, or shown by a combination of these techniques.” Id. A copy of this delineation must be *129 filed with the Register of Deeds and, as is true of the delineation of the municipality’s corporate boundaries, maintained in the office of the municipality’s clerk. Id. §§ 160A-22 (2015), 360(b).
To establish its extraterritorial boundary, the Town adopted Ordinance 83-2, describing the extraterritorial area by metes and bounds and topographical features, Boone, N.C. Ordinance 83-2, § 1 (Mar. 31, 1983), and amended the zoning map to include the extraterritorial area, id. § 4. The Town later expanded its reach of extraterritorial jurisdiction into other specified areas located within the one-mile perimeter. E.g., id. 83-5 (Apr. 7, 1983); id. 87-12 (Dec. 22, 1987); id. 92-03 (Sept. 3, 1992); id. 98-04 (Nov. 19, 1998); id. 99-02 (May 27, 1999). With each additional area, the Town amended its zoning map to reflect and describe the new boundaries. E.g., id. 83-2, § 4; id. 83-5; id. 87-12, § 4; id. 92-03, § 4; id. 98-04, § 4; id. 99-02, § 4. County residents living within the added territory were then notified that the political body governing zoning and development had changed. See N.C.G.S. § 160A-360(al) (2015).

. The State contends that plaintiff’s claims are barred by the doctrine of sovereign immunity, that “[p]laintiff lacks standing, as well as the capacity to sue, for the withdrawal of its extraterritorial jurisdictional powers,” that reallocation of authority over planning and development within the extraterritorial jurisdiction “constitutes a legitimate exercise of legislative authority over [the legislature’s] political subdivisions” and a non-justiciable ... political question! ] within the purview of the legislative branch of government,” and that plaintiff fails to state a claim for relief under the state constitution. Because we resolve this case based on the General Assembly’s plenary power acknowledged in the first clause of Article VII, Section 1, we do not address the other arguments.

. Residents of extraterritorial jurisdiction areas are not allowed to vote in local government municipal elections; they remain county residents for voting purposes. See Ordinance 82-11; N.C.G.S. §§ 160A-360(al), -362 (2015).

. Significantly, the text of Article VII, Section 1, recognizing the General Assembly’s historic duty to provide for local government, was adopted against the backdrop of Article II, Section 24 and the various court decisions describing its application. See 1968 Constitution Commission Report 85; see also N.C. State Bar v. DuMont, 304 N.C. 627, 635, 286 S.E.2d 89, 94 (1982) (relying on the 1968 Constitution Commission Report to “ascertain[ ] the intent of the framers and adopters, [and] the object and purpose of the revision”). Following well-established principles of construction, one amendment cannot be read to eliminate the other, and the one more recent in time is given its full application. In re Peoples, 296 N.C. 109, 159, 250 S.E.2d 890, 919 (1978) (considering constitutional amendments “in pari materia with the other sections of our Constitution which it was intended to supplement” (citations omitted)), cert. denied, 442 U.S. 929, 99 S. Ct. 2859, 61 L. Ed. 2d 297 (1979); Perry v. Standi, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) (“Constitutional provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption.” (emphasis added)).

. Instances of creating, organizing, and reorganizing political subdivisions have met this Court’s approval, both before and after the 1917 amendments that created the predecessor to Article II, Section 24. See, e.g., Bethania Town Lot Comm. v. City of Winston-Salem, 348 N.C. 664, 668, 502 S.E.2d 360, 362 (1998) (“The General Assembly may, by special or local act, create municipalities and change the boundaries of municipalities.” (citations omitted)); Lilly v. Taylor, 88 N.C. 489, 490-91, 494-95 (1883)-(affirming the legislature’s creation and subsequent repeal of the charter of the Town of Fayetteville); Mills v. Williams, 33 N.C. (11 Ired.) 558, 560, 563-64 (1850) (upholding the legislature’s “power to create and abolish” Polk County); see also In re Ordinance of Annexation No. 1977-4, 296 N.C. 1, 16-17, 249 S.E.2d 698, 707 (1978) (Municipalities have no inherent constitutional right to their boundaries and derive authority only from the powers delegated by the legislature, (citations omitted)).

. See Piedmont Ford Truck Sale, Inc. v. City of Greensboro, 324 N.C. 499, 502, 380 S.E.2d 107,109 (1989) (“The extension of boundaries of cities has been held to be apolitical decision —” (citations omitted)); see also Texfi Indus., Inc. v. City of Fayetteville, 44 N.C. App. 268, 273, 261 S.E.2d 21,25 (1979) (recognizing the General Assembly’s authority to create, destroy, or change the boundaries of any political subdivision), ajf’d, 301 N.C. 1, 269 S.E.2d 142 (1980); Jones v. Jeanette, 34 N.C. App. 526, 532, 239 S.E.2d 293, 296 (1977) (stating that setting boundaries under Article VII, Section 1 is a “permissible legislative function” “left to legislative discretion” (citing, inter alia, Hunter, 207 U.S. at 178-79, 28 S. Ct. at 46, 52 L. Ed. at 159)).

. See Bethania Town Lot Comm., 348 N.C. at 668, 502 S.E.2d at 362; Plemmer v. Matthewson, 281 N.C. 722, 725, 190 S.E.2d 204, 206-07 (1972) (The legislature may create a municipality by special act and may provide procedures for annexation by special act.); Town of Highlands v. City of Hickory, 202 N.C. 167, 168, 162 S.E. 471, 471 (1932) (upholding a local act that extended the municipal limits of one town and repealed statutes under which adjacent towns were organized); Holmes, 197 N.C. at 748, 150 S.E. at 628 (The legislature may extend by special act extraterritorial jurisdiction and the authority of a municipality to provide services outside its corporate limits.); State v. Rice, 158 N.C. 635, 636, 74 S.E. 582, 582 (1912) (recognizing the legislature’s authority to allow the exercise *134 of extraterritorial jurisdiction outside municipal limits by local act); Lutterloh v. City of Fayetteville, 149 N.C. 65, 69, 62 S.E. 758, 760 (1908) (recognizing validity of extension of corporate boundaries through annexation by local act); see also In re City of Durham Annexation Ordinance, 69 N.C. App. 77, 84, 316 S.E.2d 649, 654 (“Article VII, Section 1 is not a power of the General Assembly which must be carried out or enacted by general laws as defined in Article XIV, Section 3.”), appeal dismissed and disc. rev. denied, 312 N.C. 493, 322 S.E.2d 553 (1984).

. This approach of conducting an Article II, Section 24 analysis only when the challenged statute specifies a specific “power” or “duty” is consistent with our prior decisions. la. Piedmont Ford Truck Sale, Inc. v. City of Greensboro, the plaintiffs challenged a local act annexing certain land to the City of Greensboro. 324 N.C. 499, 501, 380 S.E.2d 107, 108 (1989). While the annexation clearly arose under the authority to “fix the boundaries of cities” acknowledged in Article VII, Section 1, id. at 503, 380 S.E.2d at 110, because the act also contained a specific “provision regarding solid waste collection,” the plaintiffs argued the statute violated Article H, Section 24, id. at 504, 380 S.E.2d at 110. Because the statute specified a particular “power,” this Court conducted an analysis under Article II. Id. at 504-06, 380 S.E.2d at 110-11. When viewed as a whole, the explicit grant of power was a “small part” of the legislation, id. at 506, 380 S.E.2d at 111, and this Court concluded that “[t]he provision... regarding solid waste collection” did not violate Article n, Section 24, id. at 506, 380 S.E.2d at 111. See also, e.g., Lamb v. Bd. of Educ., 235 N.C. 377, 379-80, 70 S.E.2d 201, 203 (1952) (concluding that an act expressly restricting certain express powers of the Randolph County Board of Education violated the Article II limitations on local acts); Idol v. Street, 233 N.C. 730, 733, 65 S.E.2d 313, 315 (1951) (concluding that an act that “conferred] power upon the Board of Aldermen of the City of Winston-Salem and the Board of Commissioners of Forsyth County” to, inter alia, “name a joint city-county board of health,” which varied from general law, “[wa]s a local act relating to health” in violation of the Article II limitations on local acts); Bd. of Health v. Bd. of Comm’rs, 220 N.C. 140, 143-44, 16 S.E.2d 677, 678-79 (1941) (concluding that an act removing from the Nash County Board of Health the power to appoint a county health officer was a local act relating to health in violation of the Article H limitations on local acts).

. See Rice, 168 N.C. at 636, 640, 74 S.E. at 582, 684 (upholding a City of Greensboro ordinance regulating hog farming within one-fourth mile of the corporate limits, adopted pursuant to the 1911 statutory delegation of authority by charter amendment).

. E.g., Act of Apr. 23, 1949, ch. 1192, sec. 1, 1949 N.C. Sess. Laws 1521, 1521 (authorizing Town of Tarboro to exercise zoning powers within one mile beyond the Town’s corporate limits); Act of Mar. 31, 1949, ch. 700, sec. 3, 1949 N.C. Sess. Laws 732, 733 (same for City of Gastonia); Act of Mar. 28, 1949, ch. 629, secs. 1, 2, 1949 N.C. Sess. Laws 640, 640-41 (same for Town of Chapel Hill); Act of Mar. 26, 1949, ch. 540, secs. 1, 4, 1949 N.C. Sess. Laws 541, 541-42, 543 (same for City of Raleigh); see also Report of the Municipal Government Study Commission 18 (1958) [hereinafter Municipal Report] (“A total of 19 cities have, by special act, been given authority to zone for one mile or more beyond their limits.”).

. Whether enforcing its ordinances inside its municipal limits or extraterritorially, a town receives the authority to govern territory from the legislature. See Holmes, 197 N.C. at 744, 150 S.E. at 626 (“The general rule is that a municipal corporation has no extraterritorial powers .. . .”); Town of Lake Waccamaw v. Savage, 86 N.C. App. 211, 213, 356 S.E.2d 810, 811 (recognizing that the General Assembly may by local act permit a town to exercise extraterritorial jurisdiction), disc. rev. denied, 320 N.C. 797, 361 S.E.2d 89 (1987).

. County citizens residing within the affected territory cannot vote for Town officials. Ordinance 82-11; see N.C.G.S. §§ 160A-360(al), 362. While County residents subject to the Town’s extraterritorial jurisdiction are represented on the Town’s planning board and board of adjustment, Ordinance 82-11, these extraterritorial-jurisdiction appointees may only vote on matters involving the extraterritorial area, see N.C.G.S. §§ 160A-360(al), 362; see also Municipal Report 18 (“ [Governmental action affecting the use of property should originate in a governing board elected by persons subject to such action . . . [and] residents of the area affected should be given a voice... through the naming of outside residents to local planning boards and boards of adjustment.”).