STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND ANS-A-PHONE COMMUNICATIONS, INC., APPLICANT v. THE PUBLIC STAFF, INTERVENOR

No. 8010UC885

(Filed 2 June 1981)

1. **Utilities Commission § 32 — property included in rate base — terminal installed after test period — no offsetting adjustments to revenues**

   In a proceeding to establish new rates for a utility providing mobile radio service and a radio paging service, the Utilities Commission did not err in including in the rate base of the utility the cost of a new mobile telephone terminal installed after the end of the test period without making any offsetting adjustments to revenues produced by the new terminal where the decision to install the terminal was made during the test period, the terminal was in place and operating at the time of the hearing, and the evidence showed that the new terminal was installed to improve the quality of service and it did not generate any increased revenues. G.S. 62-133(c).

2. **Utilities Commission § 38 — radio common carrier — operating expenses — costs of dispatch service**

   The Utilities Commission properly included in a radio common carrier's test period operating expenses certain costs related to the provision of dispatch services by its answering service, which is not a public utility, to its radio common carrier customers.

**3. Utilities Commission § 37— working capital ratio—percentage of operation and maintenance expenses**

   The Utilities Commission did not err in using one-twelfth of the annual operation and maintenance expenses instead of one-twenty-fourth of these expenses in calculating the working capital allowance for a radio common carrier because the carrier billed its recurring charges on the 25th day of the month preceding the month in which the associated service is to be rendered.

APPEAL by intervenor, the Public Staff, from order of North Carolina Utilities Commission entered 28 February 1980. Heard in the Court of Appeals 1 April 1981.

This proceeding was instituted on 17 August 1979 when Ans-A-Phone Communications, Inc. (Ans-A-Phone), filed an application with the North Carolina Utilities Commission (Commission) pursuant to G.S. 62-130 *et seq.* requesting a rate increase and revision of regulations. The reasons given for this application were to improve and expand service, to adapt to changing conditions and to increase utility revenues in relation to costs of serving. Ans-A-Phone indicated that it provided two classes of services as a radio common carrier: radio telephone service (or mobile radio service) and radio service (or paging). Ans-A-Phone also offered an answering service, but indicated that this was a non-utility service and not considered in its application. The Commission thereafter established that the test period for determining the rate would be the twelve month period ending 31 December 1978. The Public Staff (the Staff) then intervened on behalf of the consuming public pursuant to G.S. 62-15(d).

During the four days of hearings, the Commission heard testimony from both parties and considered numerous exhibits filed by Ans-A-Phone. On 28 February 1980 the Commission entered an order authorizing Ans-A-Phone to adjust its rates and charges to produce, based upon units in operations as of 31 December 1978, an increase in annual gross revenues of $74,029. The Commission based this rate increase on the following findings:

   3. That the test period established by the Commission is the 12 months ended December 31, 1978. The annual increase in revenues sought by Ans-A-Phone under its proposed rates as filed in the proceeding is approximately $88,135.

Utilities Commission v. The Public Staff

4. That Ans-A-Phone is providing good service to its customers in North Carolina.

5. That the original cost of Ans-A-Phone's plant in service used and useful in providing radio common carrier services in North Carolina is $482,519. From this amount should be deducted the accumulated depreciation associated with the original cost of this plant resulting in a reasonable original cost less depreciation or a net plant in service of $239,310.

6. That the reasonable allowance for working capital for Ans-A-Phone is $18,935.

7. That the original cost of Ans-A-Phone's net plant in service to customers within the State of North Carolina of $239,310 plus the reasonable allowance for working capital of $18,935 less the investment tax credit of $7,327 yields a reasonable original cost net investment (rate base) of $250,918.

8. That the Company's test year operating revenues net of uncollectibles after appropriate accounting adjustments under present rates are approximately $253,014 and under the Company's proposed rates would have been approximately $339,827. [($88,135 × .015) + $88,135 + $253,014]

9. That the appropriate level of the Company's operating revenue deductions (or expenses) under present rates after accounting and pro forma adjustments, including taxes is $269,350 which includes the amount of $52,060 for actual investment currently consumed through actual reasonable depreciation.

10. That the capital structure which is proper for use in this proceeding is the following:

| Item | Percent |
|------|---------|
| Long-Term Debt | 40.11 |
| Common Equity | 59.89 |

11. That the Company's proper embedded cost of debt is 13.53%. The fair rate of return which should be applied to the original cost net investment of Ans-A-Phone (or rate

base) is 18.60%. This return on Ans-A-Phone's rate base will allow the Company the opportunity to earn a return on its common equity of 22.00% after recovery of the embedded cost of debt. Such returns on rate base and common equity are just and reasonable.

12. That under present rates the Company's pro forma return on its rate base at the end of the test year is approximately (6.33%) which is substantially below that which the Commission has determined to be just and reasonable. Therefore, in order to earn the level of returns which the Commission finds to be just and reasonable, Ans-A-Phone should be allowed to increase its rates and charges so as to produce an additional $74,029 based on operations during the test year. The Commission finds that, given efficient management, this amount of additional gross revenue dollars will afford the Company a fair opportunity to earn the level of returns on rate base, and original cost equity which the Commission has found to be fair, both to the Company and to its customers

The Staff has appealed from this order.

*Thomas R. Eller, Jr., for Ans-A-Phone Communications, Inc., applicant-appellee.*

*Robert F. Page, for Robert Fischbach, Executive Director, Public Staff, North Carolina Utilities Commission, intervenor-appellant.*

MARTIN (Robert M.), Judge.

[1] In Assignment of Error No. 1 the Staff argues that the Commission "misconstrued and misapplied G.S. 62-133(c) in allowing adjustments to rate base and expenses proposed by the Appellee (Ans-A-Phone) which were based on circumstances and events occurring after the end of the test period but before the hearing was closed, while rejecting similar, offsetting adjustments to revenues proposed by the Appellant (Public Staff)." The exceptions noted under this assignment of error are to the Commission's findings of fact and the Commission's evidence and conclusions for these findings. As earlier noted the test period established by the Commission was the twelve month period ending 31 December 1978. Staff specifically contends that the Com-

mission erroneously increased the rate base by $85,000 when it included the cost of a new Glenayre Mobile Telephone Terminal, since this cost was not offset by the revenues produced by this new terminal. To remedy this alleged error, the Staff determined the revenues as of the period ending 30 September 1979. Their calculations for this period allegedly showed an increase in revenues due to customer growth. Staff claims that the Commission erroneously ignored these calculations.

We find no merit to Staff's first assignment of error and conclude that the findings as to the rate base, revenues and expenses are grounded upon a proper application of G.S. 62-133(c) and upon substantial, competent and material evidence. Section (c) of 62-133, dealing with the fixing of rates, provides:

> The original cost of the public utility's property, including its construction work in progress, shall be determined as of the end of the test period used in the hearing and the probable future revenues and expenses shall be based on the plant and equipment in operation at that time. The test period shall consist of 12 months' historical operating experience prior to the date the rates are proposed to become effective, but the Commission shall consider such relevant, material and competent evidence as may be offered by any party to the proceeding tending to show actual changes in costs, revenues or the cost of the public utility's property used and useful, or to be used and useful within a reasonable time after the test period, in providing the service rendered to the public within this State, including its construction work in progress, which is based upon circumstances and events occurring up to the time the hearing is closed.

Ans-A-Phone correctly applied this statute. In determining its rate base, it made adjustments for actual expenses and revenues occurring up to the time of the hearing. The expense of the new terminal was included in this determination, since the decision to install the terminal was made in 1978 and since the terminal was in place and operating at the time of the hearing. Ans-A-Phone did not offset this expense by any revenue increase because none existed. Ans-A-Phone's president testified that the old IMTS terminal was replaced with the Glenayre terminal because the old terminal had become obsolete and was daily breaking down. He indicated that the principal reason for making the change "was

service quality and not revenues." Ans-A-Phone's General Manager testified, "The new machine has no greater capacity for serving numbers of customers than the old terminal." Finally an officer of a consulting firm employed by Ans-A-Phone stated:

> I knew that the negotiations for the investment (new terminal) had been going on for some time. I also knew that the plant would be non-revenue producing; that it was put in to improve service to mobile radiotelephone customers; and that it was replacing old plant which was doing the same thing but not doing it very well. I felt I could not ignore a major investment such as this which was designed to improve service, particularly when it amounts to about 25% of the gross plant.

This evidence presented by Ans-A-Phone was considered by the Commission to be competent, material and substantial. In contrast, the Staff's evidence of increased revenues was rendered incompetent by other evidence later presented by the Staff. Thomas Collins, Jr., an accountant for the Staff, admitted:

> I did not do a detailed investigation of all expenses for that annual period (ending 30 September 1979). . . . I do not know for a fact if the expenses would be greater or less if I had investigated all expenses for 12 months ending on September 30, 1979.
>
>      . . .
>
>      . . . If Mr. Willis (a Staff engineer) calculated revenues for the 12 months ending September 30, 1979 on a going-level basis, there is not a matching between his revenues and my expenses for that 12 month period.

Finally we note that Willis' showing of increased revenues was based upon a mere mathematical projection and not upon a showing of actual changes in revenues as required by G.S. 62-133(c).

When the Commission's findings are supported by competent, material and substantial evidence, they are binding upon this Court. *Utilities Comm. v. Farmers Chemical Assoc.*, 33 N.C. App. 433, 235 S.E. 2d 398, *disc. review denied*, 293 N.C. 258, 237 S.E. 2d 539 (1977). *See, also* G.S. 62-94. Such findings of fact and the Commission's determination of what rates are reasonable may not be

reversed or modified by a reviewing court merely because the court would have reached a different finding or determination upon the evidence. *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972). With this in mind, the Commission's findings of fact and conclusions as to rate base, expenses and revenues cannot be reversed or modified even if this Court deems the Staff's evidence as to increased revenues competent.

[2]    Staff next argues that the Commission erred in its calculation of Ans-A-Phone's reasonable test period operating expenses "by including therein some $28,692 of costs related to the provision of operator answering and message holding and relay, which are not public utility services." The Staff further contends that these services were unnecessary for subscribers using automatic paging and radio telephone units. In support of their argument, the Staff cites *Utilities Comm. v. Radio Service, Inc.*, 272 N.C. 591, 158 S.E. 2d 855 (1968). This case dealt with an applicant who sought a certificate of public convenience and necessity permitting it to operate as a utility providing mobile radio telephone service in a territory occupied by a land-line telephone utility. The land-line utility, intervening as a protestant, claimed that it was authorized to render similar services. The Commission denied the application. The Superior Court later reversed on the grounds that Radio Service, Inc., was authorized to render additional services. Our Supreme Court upheld the Commission's decision noting that neither the additional answering service nor message relaying service proposed to be rendered by Radio Service, Inc., is determinative of whether the proposed services of Radio Service, Inc., are substantially the same as those of the land-line telephone company. The answering service and message relaying service were deemed "non-utility services."

*Radio Service, Inc.*, was decided before the enactment of Article 6A of Chapter 62 of the General Statutes. In this Article radio common carriers were given utility status. G.S. 62-119(3) of Article 6A defines "radio common carriers" as:

[E]very corporation, company, association, partnership and person and lessees, trustees, or receivers, appointed by any court whatsoever owning, operating or managing a business of providing or offering a service for hire to the public of one-way or two-way radio or radiotelephone communications

whether interconnected with the land line telephone system or not and licensed by the Federal Communications Commission, but not engaged in the business of providing a public land line message telephone service or a public message telegraph service.

In recognizing radio common carriers as a public utility, we believe that the legislature also recognized other services which a radio common carrier deems essential to its customers. Such services are an integral part of the carrier's function. In the case *sub judice*, the Commission concluded that the $28,692 expense, incurred by charging $3 per pager a month was "an integral, necessary part of the paging service provided by Ans-A-Phone." The Commission indicated that this expense covered dispatch services for paging customers provided by telephone operators, monitoring of the radio equipment on a 24 hour, seven day a week basis by the answering service employees and replacement of broken pagers or mobile telephones by operators on a 24 hour, seven day a week basis. This finding was supported by testimony of several public witnesses. One witness, a user of Ans-A-Phone's automatic and manual mobile telephone services, testified that she and her husband needed round-the-clock operator attendance for their concrete business. She indicated that "it would handicap our use of the system" if Ans-A-Phone no longer provided operators who held and relayed messages to her or from her to others in her business operations. The manager of the emergency room at Moses Cone Hospital indicated that many of the staff physicians at the Hospital were Ans-A-Phone customers; and that Ans-A-Phone's operator-pager system was valuable to the Hospital. A Greensboro gynecologist-obstetrician and subscriber to Ans-A-Phone's paging service, testified that "the assistance provided by the operator in receiving and forwarding messages is an integral part of the radio paging service." Furthermore, the president of Ans-A-Phone indicated that pursuant to his tariff with the Commission, he was required to offer operator dispatch services. He noted, "In my opinion it is a necessity that the utility operation continue the dispatch service for all customers." This Court concludes that the testimony of these witnesses constitutes substantial, competent and material evidence. The inclusion of the $28,692 expense as an operating expense is therefore proper. We emphasize that this conclusion is not inconsistent with that portion of the *Radio Service, Inc., supra*, decision, wherein an

answering service was denied public utility status. Ans-A-Phone, in its application for a rate increase emphasized that its application related only to the radio common carrier services offered and not to its telephone answering services and merchandising. Only the dispatch services rendered by the answering service to the radio common carrier customers were included.

[3]  In their third and final assignment of error the Staff contends that the Commission erroneously used one-twelfth of annual operation and maintenance expenses instead of one-twenty-fourth of these expenses in calculating the working capital allowance. The Staff argues that the one-twenty-fourth formula was proper, since Ans-A-Phone bills its recurring charges on the 25th day of the month preceding the month which the associated service is to be rendered. The Staff's accountant further testified that he had "concluded that the majority of revenues are received before and during the period service is being rendered." The Staff has failed to cite any supporting authority for this argument. Furthermore, they have failed to present any competent, material or substantial evidence. In a similar situation our Supreme Court did not accept the Attorney General's argument that a telephone company's rate base for working capital should be reduced, since customers were billed one month in advance. The Court noted, "While the company bills its customers for local service one month in advance, the record does not show when these bills are actually paid so as to place the money in the hands of the company for use." *Utilities Comm. v. Morgan,* Attorney General, 277 N.C. 255, 274, 177 S.E. 2d 405, 417 (1970). In the case on appeal, the Commission noted in its order that operating and maintenance expenses had been divided by twelve to arrive at the cash requirement for working capital in prior telephone cases where this formula method has been used. The Staff has failed to show that this method was improper here.

After examining the entire record as submitted, we hold that the Staff has failed to show that the findings and conclusions were unsupported by competent, material and substantial evidence or were arbitrary and capricious.

Affirmed.

Judges WHICHARD and BECTON concur.