NANCY BAZEMORE v. BERTIE COUNTY BOARD OF ELECTIONS.

(Filed 12 April, 1961.)

**1. Constitutional Law § 1:   Elections § 2—**

The States have broad powers to determine the conditions under which the right of suffrage may be exercised, and the literacy test prescribed by G.S. 163-28 is a constitutional qualification of the right to be registered as a voter in this State.

**2. Elections § 2—**

G.S. 163-28 requires only a reasonable proficiency in reading and writing any section of the State Constitution in the English language; under the statute neither excessive reading and writing nor writing from dictation may be required.

**3. Same—**

G.S. 163-28 does not require that literacy tests be administered to all applicants for registration, and the registrar need not require the test of those whom he knows to have the requisite ability, but the test must be administered without discrimination in those instances where uncertainty of ability exists.

**4. Statutes § 6—**

A statute which is constitutionally fair and impartial on its face may

be unconstitutional in its application in a particular instance if it is administered so as to result in unjust and illegal discrimination between persons in similar circumstances.

**5. Elections § 2:    Administrative Law § 2—**

While a person must exhaust his administrative remedies before applying to the courts, on an appeal to the county board of elections by a person refused registration, such person is within her rights in refusing to submit to a literacy test not sanctioned by G.S. 163-28, and is given the statutory right to appeal from the refusal of such board to determine her right to registration until she should submit to and pass the unauthorized tests. G.S. 163-28.1 through G.S. 163-28.3.

PARKER, J. concurs in the result.

APPEAL by plaintiff from *Stevens, J.,* August-September 1960 Term of BERTIE.

This is a civil action.

Plaintiff, Nancy Bazemore, is a Negro, 47 years of age, and for many years has resided within the boundaries of Woodville Township voting precinct, Bertie County. On 14 May 1960 she applied to the registrar of that precinct to register as an elector. The books were open for registration. As a qualifying test the registrar required her to write, from his reading and dictation, a portion of the Constitution of North Carolina. When the test was completed the registrar declared that she was not qualified to register and declined to list her as an elector in the precinct.

In apt time and in compliance with the pertinent statute plaintiff appealed to the Bertie County Board of Elections. All members of the Board were present when the appeal was heard. Plaintiff was present in person and represented by counsel. The Board offered to test her ability "to read and write any section of the Constitution of North Carolina in the English language." A member of the Board began to read a section of the State Constitution and requested plaintiff to write it from his dictation. Upon advice of counsel she declined to take this test. Thereupon, the Board refused registration because she would not submit to this test.

Plaintiff appealed to the Superior Court. Defendant, Board of Elections, moved to dismiss the appeal on the ground *inter alia* that plaintiff refused to submit to the test offered by the Board.

The court made findings of fact. Those essential to this appeal are:

At the hearing before the Board "the plaintiff took a seat at the table opposite the members of the said Bertie County Board of Elections preparatory to writing; . . . a member of the Board then be-

gan to read in a clear and reasonable tone of voice and at a reasonably slow rate of speed a section of the Constitution of North Carolina to the said Nancy Bazemore who was requested to write as the same was being read to her, . . . that she failed and neglected at said time to take and submit to the reasonable test offered and begun to be administered to her upon the *de novo* hearing before said board. . . . (T)he . . . Board . . . decided that her appeal should be denied and registration refused . . . ."

Thereupon the court entered judgment "that the motion of defendants to dismiss said action . . . be and the same is hereby allowed and the said action is hereby dismissed from the Docket . . . ."

Plaintiff filed exceptions and appealed.

*James R. Walker, Jr., Samuel S. Mitchell, and Robert L. Harrell, Sr., for plaintiff.*

*John R. Jenkins, Jr., and Pritchett and Cooke for defendant.*

*Attorney General Bruton and Assistant Attorney General Moody for the State of North Carolina, amicus curiae.*

MOORE, J. It is undisputed that the States have broad powers to determine the conditions under which the right of suffrage may be exercised. *Pope v. Williams*, 193 U.S. 621, 632 (1903) ; *Mason v. Missouri*, 179 U.S. 328, 335 (1900). The right of suffrage is not a necessary attribute of citizenship. The right to vote in the States comes from the States. *United States v. Cruikshank*, 92 U.S. 542, 555-6 (1875).

In North Carolina every citizen of the United States who shall have resided in the State for one year and in the precinct ward, or election district in which he or she offers to vote, thirty days preceding the election shall, unless otherwise disqualified, be entitled to exercise the privilege of suffrage. G.S. 163-25.

Persons under twenty-one years of age, idiots and lunatics, and persons who have been convicted of a felony and have not had their citizenship restored in the manner prescribed by law, shall not be allowed to register or vote in this State. G.S. 163-24.

"Only such persons as are registered shall be entitled to vote . . . ." G.S. 163-27.

"Every person presenting himself (or herself) for registration shall be able to read and write any section of the Constitution of North Carolina in the English language. It shall be the duty of each registrar to administer the provisions of this section." (Parentheses added). G.S. 163-28.

BAZEMORE v. BOARD OF ELECTIONS.

The decision in the instant case depends primarily upon the interpretation and construction of G.S. 163-28. So far as the record discloses plaintiff was not denied the right to register because of any of the provisions of G.S. 163-24 or G.S. 163-25. We must determine this question: Is the educational or literacy test, which the registrar required of plaintiff and which the Bertie County Board of Elections attempted to employ, a reasonable application of the purpose, design and meaning of the phrase, "read and write any section of the Constitution of North Carolina in the English language"?

Parenthetically, it is settled that this particular statute (G.S. 163-28) is constitutional. Its constitutionality was directly challenged in *Lassiter v. Board of Elections*, 248 N.C., 102, 102 S.E. 2d 853 (1958). *Winborne, C.J.*, delivered the opinion of the Court and reviewed the constitutional and statutory history of the literacy test as a qualification for voting in this State, beginning with chapter 218, P. L. 1899, and the constitutional amendment of 1902, and continuing through the enactment of G.S. 163-28 in its present form in 1957. The opinion recognizes that the decision in *Guinn v. United States*, 238 U.S. 347 (1915), in effect struck down the "grandfather clause" and, by reason of the indivisibility section, the other provisions of the 1902 amendment. But the Court decided that the 1945 amendment incorporates by reference the literacy test and gives constitutional basis for the 1957 version of G.S. 163-28. The opinion states: "In this light, the 1945 amendment so proposed and later adopted had the effect of incorporating and adopting anew the provisions as to the qualifications required of a voter as set out in Article VI, freed of the indivisibility clause of the 1902 amendment. And the way was made clear for the General Assembly to act." The opinion continues: "In this connection, a doctrine firmly established in the law is that a State Constitution is in no matter a grant of power. All power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it."

The plaintiff in the *Lassiter* case appealed from this Court to the Supreme Court of the United States. *Lassiter v. Northampton Election Bd.*, 360 U.S. 45 (1959). There the judgment of this Court was affirmed by unanimous decision. *Douglas, J.*, delivered the opinion and made the following pertinent observations:

". . . (W)hile the right of suffrage is established and guaranteed by the Constitution (*Ex parte Yarbrough*, 110 U.S. 651, 663-665; *Smith v. Allwright*, 321 U.S. 649, 661-662) it is subject to the imposition of state standards which are not discriminatory and which do not

contravene any restriction that Congress, acting pursuant to its constitutional powers, has imposed. See *United States v. Classic,* 313 U.S. 299, 315. . . . .

"We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. . . . The ability to read and write likewise has some relation to standards designed to promote intelligent use of the ballot. Literacy and illiteracy are neutral on race, creed, color, and sex, as reports around the world show. . . . (I)n our society where newspapers, periodicals, books, and other printed matter canvass and debate campaign issues, a State might conclude that only those who are literate should exercise the franchise. . . .

"The present (North Carolina) requirement, applicable to members of all races, is that the prospective voter 'be able to read and write any section of the Constitution of North Carolina in the English language.' That seems to us to be one fair way of determining whether a person is literate, not a calculated scheme to lay springs for the citizen. Certainly we cannot condemn it on its face as a device un-related to the desire of North Carolina to raise the standards for people of all races who cast the ballot." (Parentheses added).

Reasonable literacy tests to determine qualifications for voting have been consistently held constitutional. *Williams v. Mississippi,* 170 U.S. 213, 225 (1898); *Davis v. Schnell,* 81 F. Supp. 872, 876 (1949), aff'd. 336 U.S. 933 (1949). See also *Allison v. Sharp,* 209 N.C. 477 (1936). In 1955 there were nineteen States with constitutional or statutory requirements of literacy as a qualification for exercise of suffrage: Alabama, Arizona, California, Connecticut, Delaware, Georgia, Louisiana, Maine, Massachusetts, Mississippi, North Carolina, New Hampshire, New York, Oklahoma, Oregon, South Carolina, Washington, Wyoming and Virginia. 31 Notre Dame Lawyer, 255 *et. seq.*

The North Carolina statute requires ability to read and write any section of the State's Constitution in the English language. It demands more than the mere ability to write one's own name and to recognize and read a few simple words. In the first place, the reading and writing must be in the English language — the common language of the Nation. The standard or level of performance is the North Carolina Constitution. To be entitled to register as an elector one must be able to read and write any section thereof. Admittedly, the standard is relatively high, even after more than a half century of free public schools and universal education. But the Constitution is the fundamental law of the State and defines the form and concept

of our government. It is the framework for democracy. It contains the same basic guaranties of individual rights and liberties and the same principles of representative government and division of powers as are embodied in the Constitution of the United States. There is a direct relationship between the standard of literacy thus imposed and citizenship of the type which should entitle one to exercise the ballot. Furthermore, there is little excuse for illiteracy in this State. North Carolina has a constitutional obligation to provide for the education of all its children. *Allison v. Sharp, supra.* "The General Assembly . . . shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years." Constitution of North Carolina, Art. IX, s. 2 (1868-1961). This constitutional provision has been well implemented for more than fifty years.

We have consulted five unabridged dictionaries, all in general use. A definition of "literacy," common to all these, is: "Ability to read and write." In Webster's New International Dictionary, 2d Ed. (1951), the definitions, of widest application, of the words "read" and "write" are: "read — To utter aloud or render something written . . . .", "Write — To form, as characters, or to trace the letters or words of, on paper, parchment, etc, with a pen or pencil . . . ." There are many other definitions, but they are more limited in application. For instance, in oratory, declamation, drama or music the word "read" has a more specialized meaning. Likewise, to an author or composer "write" means something more than the tracing of words.

Educators have an expression "functional literacy." ". . . (A) person is functionally literate when he has acquired the knowledge and skills in reading and writing which enable him to engage effectively in all those activities in which literacy is normally assumed in his culture or group." William S. Gray — The Teaching of Reading and Writing: An International Survey (1956). Functional literacy is a praiseworthy goal in education, and a high standard of literacy among all citizens is extremely desirable. But it is our opinion that the General Assembly intended the words "read" and "write" as used in G.S. 163-28 to have those meanings commonly attributed to them in ordinary usage. In construing that section, we give to the words their ordinary, natural and general meaning.

The Constitution of Wyoming provided that "No person shall have the right to vote who shall not be able to read the constitution of this State." In interpreting this provision the Supreme Court of Wyoming said: ". . . (W)e think it should follow that any provision

which excludes any class of citizens from the exercise of the elective franchise ought to receive a strict construction, without, however, doing violence to or distorting the language, to the end that none shall be held excluded who are not clearly designated." (p. 822) A concurring opinion comments further: "But the requirement of the Constitution is much more than that the voter shall simply be able to read. It is that he shall be able to read a particular instrument, — 'the Constitution of this state.' These additional words cannot be treated as mere surplusage, and rejected from our consideration. . : . The requirement is not that the voter shall have studied or shall understand and comprehend the contents or substance of it, but that he shall be able to read the specific instrument. He must have that much and that character of education." (p. 829). *Rasmussen v. Baker,* 50 P. 819 (1897).

In the instant case, it is our opinion that G.S. 163-28 requires nothing more than the mere ability to read and write any section of the State Constitution in the English language. We hold that under the provisions of this section a test of literacy that requires an applicant for registration to write a section or sections of the Constitution from the reading and dictation of another, however fairly and clearly the same might be read and dictated, is unreasonable and beyond the clear intent of the statute. The statute contemplates that the applicant shall utter aloud and render in the English language any section of the North Carolina Constitution from a legible copy of such Constitution furnished applicant for that purpose, and put down in his own handwriting any section thereof with such section before him for reference in writing the same. It is not a spelling test. Furthermore, the taking of dictation, even in longhand, requires skill, learning and practice over and beyond the ordinary process of writing.

It is suggested in the *amicus curiae* brief that writing from dictation is not unreasonable for that a blind person would be unable otherwise to copy a section. We suggest that a blind person could not read from an ordinarily printed page. Neither could a deaf-mute read aloud or take dictation. One without hands could not write at all. For the handicapped fair tests may and must be devised and given if their capabilities are in question. But we deal here with one who is apparently possessed of her normal physical functions. Such a person would not be expected to read from Braille or understand sign language.

No case has come to our attention which directly involves the reasonableness of writing from dictation as a litercy test for voting. But we do find that such test has been involved as a component of

other unreasonable administrative requirements. The Oklahoma Constitution had a provision similar to that of N.C.G.S. 163-28. The election officials examined a school teacher of thirty years experience, required him to read seven or eight pages of the Constitution and to write from dictation until he had written twenty-one pages. After two hours and fifteen minutes the officials ruled that he was not qualified to register. Others had similar experiences. The Supreme Court of that State declared: "The conduct of the election officers at these precincts can find no justification in the law, and their protest that they acted in good faith is refuted by their conduct." (p. 37). Further: ". . . (W)hen such proposed voter read intelligibly and wrote legibly, the section of the Constitution designated by the election officers, he demonstrated his qualifications to vote, and acts on the part of the election officers requiring him to write at great length many provisions of the Constitution, or detaining him for any great length of time under a pretense of examination, and thereby delay other persons from entering the polls, was without authority of law." (p. 36). *Snyder v. Blake*, 129 P. 34 (1912).

G.S. 163-28 does not contemplate the utmost proficiency in reading and writing sections of the Constitution. Perfection is not the measure of qualification. The standard is reasonable proficiency in reading and writing any section of the Constitution in the English language. The occasional misspelling and mispronouncing of more difficult words should not necessarily disqualify. The manner of giving the test to physically unhandicapped applicants has been indicated above. Furthermore, it is not an endurance test, and the law does not require that a prospective registrant read and write all or a major portion of the Constitution. The length of the tests should not be such as to unnecessarily delay others waiting to register. The statute imposes the duty of administering the tests upon the registrars.

"It is, of course, impracticable to lay down any very accurate test for determining the voter's ability to read and write within the meaning of the statute. In a general way, we may say it is sufficient if the voter can read in a reasonably intelligible manner . . . though each and every word may not always be accurately pronounced. On the other hand, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way (the) words . . . though each and every word may not be accurately spelled." (Parentheses. added). *Justice v. Meade*, 172 S.W. 678, 679 (Ky. 1915).

Quaere:   May the State Board of Elections by virtue of G.S. 163-10 (2), (15), prescribe rules and regulations for administering the provisions of G.S. 163-28?

It would be unrealistic to say that the test *must* be administered to all applicants for registration. For instance, it would be folly to require professors and teachers of political science, of known and recognized capabilities, to submit to the test. The statute only requires that the applicant *have* the ability. If the registrar in good faith knows that applicant has the requisite ability, no test is necessary. But there must be no discrimination as between citizens. The test shall be administered, where uncertainty of ability exists, to all alike.

It should not be overlooked that a law though fair on its face and impartial in appearance, may be declared unconstitutional if it is administered by public authority with an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances. *Lassiter v. Northampton Election Bd., supra; Lane v. Wilson,* 307 U.S. 268; *Williams v. Mississippi, supra; Yick Wo v. Hopkins,* 118 U.S. 356; *Davis v. Schnell, supra.*

We do not intimate or suggest that the registrar of Woodville Township precinct or the Bertie County Board of Elections have in any way acted in bad faith. But it is our opinion that the literacy test as administered by them is unreasonable and beyond the intent of the statute.

In summary, before a person may register for voting he or she must have the ability to read with reasonable proficiency any section from the Constitution of North Carolina, and to write in a reasonably legible hand any section of the Constitution put before him or her. Excessive reading and writing may not be required. Writing from dictation is not a requirement. The test may not be administered so as to discriminate between citizens.

Plaintiff was well advised to appeal from the decision of the registrar and to refuse the test offered by the County Board.

G.S. 163-28.1 to G.S. 163-28.3 make ample provision for appeals by rejected applicants. Upon appeal from a registrar the matter is heard *de novo* by the County Board of Elections. G.S. 163-28.2. When there is an appeal from the County Board the case is heard *de novo* in Superior Court; and appeals from Superior Court may be had to this Court. G.S. 163-28.3. Thus an applicant for registration is afforded ample opportunity to demonstrate and have adjudicated his or her qualifications for voting franchise; and under our statutes these opportunities may not be denied.

Defendant contends that plaintiff has no standing on appeal either in Superior Court or this Court for that she did not exhaust her administrative remedies. It is true that the State legislative process, administered by authorized officials and boards, must be completed

before resort may be had to the courts. But G.S. 163-28.1 to G.S. 163-28.3 provide for judicial procedure. For this reason the contention is invalid. *Lane v. Wilson, supra; Mitchell v. Wright,* 154 F. 2d 924 (5c 1946).

This cause is remanded to the end that the Superior Court make an order requiring the registrar of Woodville Township precinct forthwith, upon application by Nancy Bazemore, plaintiff herein, to administer to her the educational or literacy test in accordance with the provisions of G.S. 163-28 as interpreted by this opinion, and directing, if she be found qualified, that she be duly registered as of 14 May 1960. If plaintiff is found by said registrar not to be qualified for registration, she may, if so advised, employ the statutory provisions for appeal.

Error and remanded.

PARKER, J., Concurs in result.