STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION v. CAROLINA WATER SERVICE, INC. OF NORTH CAROLINA

No. 293A89

(Filed 7 March 1991)

1. **Utilities Commission § 35 (NCI3d) — rate base — water storage tank — disallowance of part of cost**

A finding by the Utilities Commission that only $78,898 of defendant utility's $187,853 investment in an elevated water storage tank in a subdivision was used and useful and should be included in the rate base was supported by evidence that the tank was built to serve 625 customers; defendant utility had only 261 customers at the end of the test year and 318 customers at the time of the hearing; and the tank was built to serve not only customers in the subdivision served by defendant but also customers in two new subdivisions which were not a part of defendant's service area.

**Am Jur 2d, Public Utilities §§ 139, 141.**

2. **Utilities Commission § 35 (NCI3d) — rate base — sewage plant expansions — disallowance of cost**

A finding by the Utilities Commission that only 30% of the cost of the expansion of a sewage treatment plant in a subdivision in Carteret County was used and useful and should be included in defendant utility's rate base was supported by evidence that there were 111 customers at the end of the

STATE ex rel. UTILITIES COMM. v. CAROLINA WATER SERVICE

[328 N.C. 299 (1991)]

test year and the plant had a capacity to serve 375 customers. Furthermore, the Commission's finding that the entire expansion of a sewage treatment plant in Mecklenburg County was not used and useful and should not be included in defendant utility's rate base was supported by evidence that the plant had the capacity before its expansion to serve all of the utility's customers at the end of the test period.

**Am Jur 2d, Public Utilities §§ 139, 141.**

3. **Utilities Commission § 34 (NCI3d) — rate base — cost of plant for future customers — matching revenues and expenses**

The Utilities Commission's use of the concept of matching which requires that future revenues and expenses be matched with the part of the cost of a plant put in the rate base which is to serve future customers was authorized by N.C.G.S. § 62-133(c) and (d).

**Am Jur 2d, Public Utilities §§ 173, 178.**

4. **Utilities Commission § 35 (NCI3d) — rate base — excess plant — absence of evidence of matching revenues and costs**

The Utilities Commission did not use two mutually exclusive rate making theories when it held that sewage treatment plants constituted excess capacity and also held that it would not consider a part of the plants used and useful after the test period because there was no evidence of revenues or costs matched with the plants during that period.

**Am Jur 2d, Public Utilities § 139.**

5. **Utilities Commission § 34 (NCI3d) — rate base — post test year use of plant expansion — matching revenues and costs**

When a utility has asked that costs for post test year use of plant expansions be included in the rate base, the Utilities Commission may under N.C.G.S. § 62-133(c) require the utility to show matching revenues and costs.

**Am Jur 2d, Public Utilities §§ 173, 204.**

6. **Utilities Commission § 32 (NCI3d) — additions to rate base — used and useful plant — matching costs and revenues**

The Utilities Commission does not have to allow additions to the rate base for a used and useful plant if the evidence

does not show what changes there may be in matching costs and revenues.

**Am Jur 2d, Public Utilities § 173.**

7. **Utilities Commission § 32 (NCI3d) — rate base — plant expansions — failure to require payment by developers**

Evidence of a utility's failure to require subdivision developers or a prior owner to provide the capital for water and sewer plant expansions could be considered by the Utilities Commission under N.C.G.S. § 62-133(d) in determining the amount of plant expansion to be included in the rate base.

**Am Jur 2d, Public Utilities §§ 139, 140.**

8. **Utilities Commission § 4 (NCI3d) — exhibit filed after hearing — consideration by Commission — waiver of right to reopen hearing**

The Utilities Commission could properly receive and consider an exhibit filed after the close of a rate hearing subject to the right of the utility to have the hearing reopened for cross-examination and rebuttal, and the utility's failure to demand that the hearing be reopened constituted a waiver of this right.

**Am Jur 2d, Public Utilities § 269.**

APPEAL pursuant to N.C.G.S. § 7A-29(b) by Carolina Water Service, Inc. of North Carolina from a final order of the North Carolina Utilities Commission entered 7 February 1989 in Docket No. W-354, Sub 69 approving a partial rate increase and requiring improvements. Heard in the Supreme Court 14 December 1989.

Carolina Water Service, Inc. of North Carolina (CWS) provides water and sewer services to approximately 20,782 customers in 65 service areas in various locations across the state. On 5 July 1988, CWS filed an application for a rate increase of $969,140 per year for customers in most of its service areas. CWS sought to include in its rate base three major capital additions. These were a sewage treatment plant in the company's Danby/Lamplighter service area in Mecklenburg County which cost $209,000, a 250,000 gallon elevated storage tank in the Cabarrus Woods service area in Cabarrus County which cost $187,853, and a 100,000 gallon per day expansion of a sewage treatment plant in the Brandywine Bay service area in Carteret County. The Utilities Commission

declared the matter to be a general rate case, suspended the proposed rates for a period of up to 270 days and set the matter for a public hearing. The Attorney General and the public staff intervened.

After a hearing the Commission entered an order. It found as to the Cabarrus Woods elevated storage tank that it would benefit all customers in Cabarrus Woods. The Commission found, however, that only a portion ($78,898) in investment in the elevated storage tank should be allowed in the rate base. To support this finding the Commission relied on evidence that the tank had a capacity to serve 625 customers and there were 261 customers at the end of the test year. There were 318 customers at the time of the hearing. The Commission allowed a part of the cost of the tank to be put in the rate base based on the ratio of 261 customers to the 625 customers the tank was capable of serving. It said that if it were to allow the company to recover that part of the investment attributed to 318 customers it would also need to balance this investment with not only the revenues of the additional 57 customers (318 minus 261) but also the expenses that these additional customers would place on the company.

The Commission found as to the sewage treatment plant at Brandywine Bay that $97,437 of the cost of $324,789 should be included in the rate base. To support this finding the Commission relied on evidence that there were 111 customers for this facility at the end of the test period. The treatment plant has the capacity to serve approximately 375 customers. The Commission concluded only 30% (111 divided by 375) of the $324,789 or $97,437 should be included in the rate base.

As to the 500,000 gallon per day expansion of the sewer plant serving the Danby/Lamplighter subdivision, the Commission found it should not be included in the rate base. To support this finding the Commission relied on evidence that the plant had a capacity of 150,000 gallons per day before the expansion which would serve the 361 customers which CWS had at the end of the test period. The Commission said that to do otherwise would violate the concept of matching investment, expenses, and revenues and would require customers existing at the end of the test year to pay for plant expansion not needed to serve them.

Carolina Water Service appealed.

STATE EX REL. UTILITIES COMM. v. CAROLINA WATER SERVICE

[328 N.C. 299 (1991)]

*Robert P. Gruber, Executive Director, and Antionette R. Wike, Chief Counsel, by Paul L. Lassiter and Robert B. Cauthen, Jr., Staff Attorneys, Public Staff—North Carolina Utilities Commission, for the Using and Consuming Public, plaintiff appellee.*

*Hunton & Williams, by Edward S. Finley, Jr., for Carolina Water Service, Inc. of North Carolina, defendant appellant.*

WEBB, Justice.

The Commission has held that the cost of the sewage disposal plant built for the Danby/Lamplighter subdivision in Mecklenburg County may not be included in the defendant's rate base. It has also held that only a percentage of the cost of the sewage treatment plant at Brandywine Bay in Carteret County and a percentage of the cost of the elevated water tank serving Cabarrus Woods in Cabarrus County may be included in defendant's rate base. In determining whether the cost of property is to be included in the rate base N.C.G.S. § 62-133 provides in part:

(b) [T]he Commission shall:

    (1) Ascertain the reasonable cost of the public utility's property used and useful, or to be used and useful within a reasonable time after the test period[.]

It is a question of fact to be decided by the Commission as to what part of the utility's property is "used and useful, or to be used and useful within a reasonable time after the test period." *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E.2d 705 (1972). If a finding of fact on this issue is supported by competent, material and substantial evidence in view of the whole record we cannot disturb this finding. *State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 358 S.E.2d 339 (1987); N.C.G.S. § 62-94(b)(5) (1975).

[1] In this case the evidence supports the findings of fact by the Utilities Commission. The evidence that the elevated storage tank at Cabarrus Woods was built to serve 625 customers and there were only 261 customers at the end of the test year and 318 customers at the time of the hearing, is evidence that the entire storage tank was not used and useful at the close of the test period and would not be used and useful within a reasonable time after the test year. There was also testimony that the tank was built to serve not only customers within the Cabarrus Woods

subdivision but customers in two new subdivisions which were not part of the defendant's service area. This evidence supported the Commission's finding as to the Cabarrus Woods storage tank.

[2] As to the Brandywine Bay sewage treatment plant, the evidence that there were 111 customers at the end of the test year and the plant had the capacity to serve 375 customers is evidence which supports the Commission's finding of fact that only 30% of the plant is used and useful. The evidence that the Danby/Lamplighter sewer plant, before its expansion, had sufficient capacity to serve its customers at the end of the test year supports a finding that this plant was not used or useful.

[3] CWS contends the Commission supported its disallowance of most of the investment in the Cabarrus Woods tank and all the investment in the Danby/Lamplighter plant by relying on the accounting concept of matching, which was error. Matching requires that future revenues and expenses be matched with the part of the cost of a plant put in the rate base which is to serve future customers. Its purpose is to prevent present customers from paying for that portion of a plant that will serve only future customers.

The appellee says matching is authorized by N.C.G.S. § 62-133 which provides in part:

> (c) The original cost of the public utility's property, including its construction work in progress, shall be determined as of the end of the test period used in the hearing and the probable future revenues and expenses shall be based on the plant and equipment in operation at that time. The test period shall consist of 12 months' historical operating experience prior to the date the rates are proposed to become effective, but the Commission shall consider such relevant, material and competent evidence as may be offered by any party to the proceeding tending to show actual changes in costs, revenues or the cost of the public utility's property used and useful, or to be used and useful within a reasonable time after the test period, in providing the service rendered to the public within this State, including its construction work in progress, which is based upon circumstances and events occurring up to the time the hearing is closed.

> (d) The Commission shall consider all other material facts of record that will enable it to determine what are reasonable and just rates.

This section of the statute directs the Commission to consider changes after the test period in costs, revenues, or property used and useful. These are factors used in matching. It is authority for the Commission to use the matching concept.

[4] We do not believe, as argued by the appellant, that the Commission used two mutually exclusive rate making theories when it held the plants constituted excess capacity and also held it would not consider a part of the plants used and useful after the test period because there was no evidence of revenues or costs matched with the plants during that period. The Commission has simply found what parts of the plants were used and useful at the end of the test period and refused to find a larger part of the plants used and useful at the time of the hearing because there was not evidence of matching costs and revenues.

We also do not believe, as argued by the appellant, that the Commission has held that N.C.G.S. § 62-133(c) requires it to make matching adjustments. It requires the Commission to consider post test period usage of plants as well as costs and revenues. The Commission has to consider these factors but it is not bound by them. Nor do we believe, as the appellant contends, that the decision in this case is inconsistent with *State ex rel. Utilities Comm. v. The Public Staff*, 317 N.C. 26, 343 S.E.2d 898 (1986) (*Glendale*) or *Utilities Commission v. Public Staff*, 52 N.C. App. 275, 278 S.E.2d 599 (1981) (*Ans-A-Phone*). In *Glendale* this Court affirmed an order by the Commission which used salary expenses based on 1985 salaries rather than the test year of 1983. The Commission held that this more appropriately represented salary expenses than the test year salary expenses. The Commission rejected the Public Staff's argument that if post test year salaries were to be used, post test year revenues must be used. We held that there was no correlation between the increased revenues and the post test year salaries. In this case there is a correlation between increased use of the plants after the test year and costs and revenues.

In *Ans-A-Phone* the Commission allowed the cost of a machine which was purchased after the test year to be included in the rate base. The evidence showed the machine was not purchased to serve new customers but was to replace an older and more inefficient machine. There was no evidence of increased customers because of the new machine.

STATE EX REL. UTILITIES COMM. v. CAROLINA WATER SERVICE

[328 N.C. 299 (1991)]

The appellant contends there is no evidence that the added post test period customers served by the Cabarrus Woods tank produced any revenues which can be attributed to the tank. We believe it is reasonable to conclude that if there were new customers they paid for the water, which would be revenues attributed to the tank. The appellant also contends that there is no evidence that the expansion of the Danby/Lamplighter treatment plant contributed to gaining the added customers. Whether or not the plant contributed to gaining new customers CWS wanted the Commission to hold that plant would be used and useful on account of these new customers. The Commission had the right to require a showing of matching revenues and costs.

The appellant further contends that if post test period adjustments exist that reduce the revenue requirement, the remedy is to quantify the adjustments and recognize them in calculating cost of service. The Commission's order is consistent with this premise. There was not sufficient evidence to quantify the adjustments and for that reason the Commission did not allow an addition to the rate base.

[5] CWS contends that the disallowance in the rate base of a part of the costs of plant expansion, because there was not evidence of matching costs and revenues, unlawfully shifted the burden to it of proving these factors. CWS, relying on *Utilities Commission v. Intervenor Residents*, 305 N.C. 62, 286 S.E.2d 770 (1982), says there is a presumption that it acted prudently in making the investments. It says that until some evidence of matching costs and revenues was offered, it had no duty to offer such evidence. We do not believe *Intervenor Residents* is helpful to CWS. That case dealt with the allowance of sums paid to affiliated corporations as expenses. In holding that the Commission's finding of fact that the sums paid were reasonable was supported by the evidence this Court said, "[t]he burden of going forward with evidence of reasonableness and justness arises only when the Commission requires it or affirmative evidence is offered by a party to the proceeding that challenges the reasonableness of expenses allocated to it by an affiliated company[.]" *Id.* at 76, 286 S.E.2d at 779.

*Intervenor Residents* deals with expenses shown by a utility and the proof necessary to support such an expense. In this case, CWS has asked that costs for post test year use of plants be included in the rate base. We hold that in such a case the Commis-

sion may under N.C.G.S. § 62-133(c) require a utility to show matching revenues and costs.

[6] CWS says that N.C.G.S. § 62-133(c) imposes the burden on parties seeking to show changes after the test period to prove such a change and this is inconsistent with the Commission's interpretation that it may reject evidence of an actual increase in the cost of the plant because the proponent of that evidence fails to provide evidence of a change in revenues or costs. N.C.G.S. § 62-133(c) only requires the Commission to consider post test period changes in used and useful plant. It also requires the Commission to consider changes in costs and revenues. If the evidence does not show what changes there may be in matching costs and revenues, the Commission does not have to allow additions to the rate base for a used and useful plant.

[7] The Commission said one reason it did not put all the plant expansion in the rate base was that CWS did not require developers or in the case of Brandywine Bay, the prior owner, to provide the capital for the plant additions. The rules of the Commission provide that a utility may require applicants for utility services, who require a main extension to serve a new subdivision or tract, to provide the costs for installing such a main. There was competent and material evidence in the record to support the Commission's finding of fact without relying on this evidence. We believe the Commission could consider it under N.C.G.S. § 62-133(d) which requires the Commission to consider all material facts of record that will enable it to determine what are reasonable and just rates.

CWS, relying on *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E.2d 705, argues that the Commission is laboring under the false impression that current ratepayers cannot be required to pay through rates for plant that can be used for future growth. That is not how we read the order of the Commission. As we read the order, the Commission allowed for capacity larger than presently needed which could reasonably be foreseen to be needed in the near future.

[8] In its last argument CWS contends the Commission violated its due process rights in the manner in which it disallowed the costs of the Danby/Lamplighter sewage plant. On the last day of expert testimony, a CWS witness testified on cross-examination that the Danby/Lamplighter sewer plant had been expanded by 500,000 gallons per day giving it a capacity of 650,000 gallons

STATE EX REL. UTILITIES COMM. v. CAROLINA WATER SERVICE

[328 N.C. 299 (1991)]

per day. He testified further that this would give the system the capacity to serve 1,500 customers and there were 360 customers at the end of the test year. He said he did not know how much of the investment CWS proposed to include in the rate base.

The Public Staff then moved that CWS be required to provide it with a late-filed exhibit as to this plant which would show unrecovered investment (investment minus tap fees and/or amounts paid by developers), the number of customers that were presently served and the number of customers that could be served by the facilities. CWS objected to preparing and delivering this exhibit, but it did so. The exhibit was put in evidence after the close of the hearing and the Commission relied upon it in disallowing the costs of the Danby/Lamplighter plant. CWS did not object to the introduction of this exhibit but in the motion for reconsideration it said it had been denied due process because it was not allowed to cross-examine as to this exhibit or to offer rebuttal evidence to it.

CWS argues that it was denied due process because it did not have an opportunity to cross-examine as to this exhibit or to rebut it. We hold that we are bound by *Utilities Commission v. Telegraph Co.*, 267 N.C. 257, 148 S.E.2d 100 (1966), to overrule this assignment of error. In that case, a party filed an exhibit after the conclusion of a hearing and the Utilities Commission relied upon it for a finding of fact. This Court held that the Commission could properly rely on the exhibit but said, "[u]nquestionably, Carolina thereupon had the right, unless waived, to demand that the hearing be reopened, in order to permit it to cross-examine witnesses for the Applicant with reference to data shown upon such 'late' exhibits, or to offer evidence of its own in rebuttal." *Id.* at 269, 148 S.E.2d at 109-110. Pursuant to *Utilities* we hold that the Commission could receive the late exhibit with the right of CWS to have the hearing reopened for cross-examination and rebuttal. CWS did not avail itself of this opportunity and it cannot now complain.

For the reasons stated in this opinion we affirm the order of the Utilities Commission.

Affirmed.