STATE EX REL. UTILITIES COMMISSION v. CAROLINA WATER SERVICE, INC. OF NORTH CAROLINA v. PUBLIC STAFF—NORTH CAROLINA UTILITIES COMMISSION v. ATTORNEY GENERAL

No. 64A93

(Filed 28 January 1994)

1. **Utilities Commission § 44 (NCI3d)— final decision by Commission—absence of appeal—reconsideration of issue not required**

Where a water service company asked the Utilities Commission to determine how the gain on a sale of certain service

areas would be distributed so that it could calculate its bargaining position, the Commission determined that the gain would be split between the company's stockholders and ratepayers, the company negotiated the sale of the service areas based on the Commission's decision, the company did not appeal this decision within thirty days after it became final, and the company later asked the Commission to reconsider this issue in a general rate case, the Commission was not required to rehear the issue of the division of the gain on sale in the general rate case. The water service company should have followed the correct channels of appeal at the time of the initial decision and appealed the final decision of the full Commission to the Supreme Court within thirty days. N.C.G.S. §§ 62-80, 62-90(a).

**Am Jur 2d, Public Utilities §§ 276 et seq.**

**2. Utilities Commission § 51 (NCI3d)— water rates—panel decision—failure to exhaust administrative remedies**

A water service company failed to exhaust its administrative remedies on the issue of the disallowance of certain expenses and is barred from pursuing judicial review of this issue where the recommended decision of a panel disallowing these expenses was not excepted to or brought before the full Commission and thus became the final order of the full Commission by operation of statute. While G.S. Ch. 62 does not explicitly set out a procedure for administrative exhaustion of issues brought before the Utilities Commission, consideration of the statute in general and public policy dictate that exhaustion be required. N.C.G.S. § 62-78(c).

**Am Jur 2d, Public Utilities §§ 276 et seq.**

**3. Utilities Commission § 31 (NCI3d)— rate penalty for inadequate service—insufficient evidence—inadequate order**

The Utilities Commission's decision imposing a 1% rate of return penalty on a water service company for inadequate service was not supported by competent, material, and substantial evidence where the company presented evidence that its service met all state and federal requirements; quality and service complaints were made by only 1% of its customers; there were no complaints from fifty of the eighty-nine subdivisions served by the company; most of the complaints came from seven subdivisions; and the Commission penalized the

company based on its overall service to its customers. In addition, the Commission's order was inadequate for the imposition of a rate penalty for inadequate service where the order indicates neither in what manner the company violated the Commission's standards nor what those standards are, and the order does not state what the company is to do to make the service adequate. N.C.G.S. § 62-79(a).

**Am Jur 2d, Public Utilities §§ 269, 274.**

4. **Utilities Commission § 35 (NCI3d)— water rates—elevated storage tanks—excess capacity**

Competent, material, and substantial evidence supported the Utilities Commission's decision that a calculation of 200 gallons per day per connection be used to determine how much excess capacity existed in a water service company's elevated storage tanks for its nonmunicipal water systems.

**Am Jur 2d, Public Utilities §§ 138 et seq.**

5. **Utilities Commission § 35 (NCI3d)— water rates—rate capacity allowance—insufficient evidence—absence of adjustment for future revenues**

A Utilities Commission decision permitting a 35% capacity allowance for future growth in a water service company's rate base was not supported by competent, material, and substantial evidence where there was evidence that a 35% figure had been approved by the Commission in the past for a typical residential subdivision but there was no specific evidence that subdivisions subject to the capacity allowance will expand by a rate of 35% in the near future, and the Commission did not follow the approved practice of setting out a matching adjustment for revenues expected to be obtained due to the potential increase in customers in the near future.

**Am Jur 2d, Public Utilities §§ 138 et seq.**

6. **Utilities Commission § 52 (NCI3d)— water and sewer rates— method of calculating excess capacity—effect of failure to appeal prior decisions**

Where the Public Staff failed to appeal in previous cases the Utilities Commission's decision to include original costs and capitalized rehabilitation costs of certain sewage treat-

496 IN THE SUPREME COURT

STATE ex rel. UTILITIES COMM. v. CAROLINA WATER SERVICE

[335 N.C. 493 (1994)]

ment plants in the rate base rather than in its consideration of the total treatment plant cost in determining excess capacity, the Public Staff is bound by those decisions and may not obtain review of this method of calculation in the present case.

**Am Jur 2d, Public Utilities §§ 138 et seq.**

7. **Utilities Commission § 35 (NCI3d) — water and sewer rates — abandoned property — unamortized portion improperly included in rate base**

.The Utilities Commission erred in determining that the unamortized portion of an extraordinary property retirement should be included in the rate base of a water and sewer company since there is no statutory authority for including in the rate base costs from a completed plant that is no longer used and useful.

**Am Jur 2d, Public Utilities §§ 138 et seq.**

Appeal pursuant to N.C.G.S. § 7A-29(b) by Carolina Water Service, Inc. of North Carolina from a final order of the North Carolina Utilities Commission in Docket No. W-34, Sub 111, entered 12 October 1992, approving a partial rate increase and requiring improvements. Heard in the Supreme Court 16 September 1993.

*Hunton & Williams, by Edward S. Finley, Jr., for applicant-appellant and -appellee Carolina Water Service, Inc. of North Carolina.*

*Public Staff Legal Division, by David T. Drooz and A. W. Turner, Jr., Staff Attorneys, for intervenor-appellant and -appellee Public Staff—North Carolina Utilities Commission.*

*Michael F. Easley, Attorney General, by Ted R. Williams, Associate Attorney General, for intervenor-cross-appellant and -appellee Attorney General.*

MEYER, Justice.

On 23 December 1991, Carolina Water Service Company ("CWS") filed an application with the North Carolina Utilities Commission for an increase in its rates for water and sewer service to its retail customers in North Carolina so as to increase annual revenue by approximately $1,553,773, or 20.8%. In the application, CWS

proposed to make the rate increase effective on 1 February 1992. In an order issued 23 January 1992, the Commission determined that the application constituted a general rate case and suspended the proposed rate increase for a period up to 270 days. On that date, the Commission issued an order scheduling public hearings on the proposed rate increase and establishing the test period as the twelve-month period ending 30 June 1991. Public hearings were held by the Commission in various areas of the state in March, April, and May of 1992.

On 31 July 1992, the three-member Commission panel that heard the evidence issued a recommended order assessing a rate of return penalty and granting a partial rate increase. The order granted CWS an increase in gross annual revenues of $480,532 from its North Carolina retail operations. This increase included calculations of a 1% rate penalty for inadequate service. CWS, the Public Staff, and the Attorney General all requested that the full Commission review various parts of the order.

A hearing was held before the full Commission on 9 September 1992. On 12 October 1992, the Commission issued its final order, which granted CWS a partial rate increase and assessed a 1% rate of return penalty for inadequacies of service. The Commission ordered an increase of $416,608. CWS and the Public Staff appealed, and the Attorney General cross-appealed to this Court.

[1] The first issue raised by CWS relates to the 10 April and 24 May 1990 applications of CWS requesting permission to relinquish its certificate of public convenience and necessity for its Beatties Ford/Hyde Park East ("Beatties Ford"), Genoa/Raintree ("Genoa"), and Riverbend Plantation ("Riverbend") service areas. At CWS's request, the Commission determined, before CWS executed binding contracts, that the division of gain on sale for the particular areas at issue would be split between CWS's stockholders and ratepayers. CWS did not appeal the decision of the Commission at that time. However, when filing this application for a general rate increase, after renegotiating the sale of the Beatties Ford and Genoa systems, CWS again asked the Commission to examine the merits of its earlier decision to split the gain on sale. The Commission chose not to reconsider the issue of the division of gain on sale for the two systems, finding that the issue had been fully and finally determined at an earlier date. CWS appealed the division of gain on sale issue to this Court. The Public Staff argues

that this issue has been fully and finally adjudicated and that CWS should therefore be estopped from seeking 100% of the gains for the stockholders.

We conclude that this decision of the Commission was clearly final and authoritative and that the issue will not be considered because CWS did not follow the correct procedures for appealing the decision of the Commission. CWS had specifically requested that the Commission determine the manner in which the gain on sale would be distributed so that it could calculate its bargaining position. CWS cannot now, after striking a bargain based on the Commission's decision, have the Commission consider its request to change the decision. This would result in an injustice to the buyers of the system, as CWS negotiated the sale of the systems under the theory that it would be receiving only 50% of the gain on sale. Thirty days after the final order was entered, the Commission's order could no longer be appealed. N.C.G.S. § 62-90(a) (1989). While the Commission can choose to rescind, alter, or amend a final decision on its own accord, it is not required to rehear an issue brought by a party after the order has been final for thirty days. N.C.G.S. § 62-80 (1989). We hold that CWS should have followed the correct channels of appeal at the time of the initial decision and appealed the final decision of the full Commission to the Supreme Court within thirty days. N.C.G.S. § 62-90(a).

[2]    We also find that CWS has not correctly followed administrative procedure in regard to appealing the decision of the panel to disallow certain expenses of CWS attributable to Water Service Corporation, as the decision of the panel was not excepted to or brought before the full Commission. As CWS failed to exhaust its administrative remedies before bringing this issue before this Court, we find that CWS cannot now appeal the decision of the panel adopted by the full Commission to this Court. CWS must first exhaust its administrative remedies before bringing an issue before the judicial system; failure to do so results in a waiver of the issue.

Chapter 62 does not explicitly set out a procedure for administrative exhaustion of issues brought before the Utilities Commission. However, consideration of the statute in general and of public policy dictate that administrative exhaustion is required in this situation. The United States Supreme Court has recently noted that even if administrative exhaustion is not specifically mandated by the legislature, it may still be required based on judicial discre-

tion. *McCarthy v. Madigan*, --- U.S. ---, ---, 117 L. Ed. 2d 291, 299 (1992). In addition, we have held that "[o]nly those who have exhausted their administrative remedy can seek the benefit of the statute [authorizing judicial review]." *Sinodis v. Board of Alcoholic Control*, 258 N.C. 282, 287, 128 S.E.2d 587, 590 (1962). The exhaustion requirement means that the "legislative process, administered by authorized officials and boards, must be completed before resort may be had to the courts." *Bazemore v. Board of Elections*, 254 N.C. 398, 406-07, 119 S.E.2d 637, 644 (1961). The North Carolina statute clearly states that "parties shall be afforded an opportunity to file exceptions to the recommended decision or order [of a panel decision or decision of a commissioner or examiner] and a brief in support thereof, provided the time so fixed shall be not less than 15 days from the date of such recommended decision or order." N.C.G.S. § 62-78(b) (1989). CWS filed no exception alleging error in the panel's decision to disallow certain expenses of CWS attributed to Water Service Corporation.

Administrative "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, --- U.S. at ---, 117 L. Ed. 2d at 299. "When no exceptions are filed within the time specified to a recommended decision or order, such recommended decision or order shall become the order of the Commission and shall immediately become effective unless the order is stayed or postponed by the Commission . . . ." N.C.G.S. § 62-78(c) (1989). To allow an appeal from a recommended order to which no exception has been taken and which has become the final order of the full Commission by operation of the statute would allow a party, in effect, to "bypass" the full Commission, usurping the administrative agency's authority. In addition, the hearing of such appeals would create an unnecessary burden on the judiciary. The only records in such cases would be the records in support of the recommended order. No product of review by the full Commission would be available to the Court. No longer would the Court have the benefit of reviewing an issue only after it has been taken through the agency's appeal procedures and thus been given scrutiny at the agency's highest level of review.

Here, it is clear that the Commission simply adopted the identical order recommended by the panel on the issue of disallowance of certain expenses of Water Service Corporation. Because CWS chose not to bring this particular issue to the attention of the full

Commission, we find that the issue cannot now be appealed to this Court. CWS failed to exhaust its administrative remedies and thus is barred from pursuing judicial review of this issue.

[3] The remaining issues raised by CWS were correctly appealed to the full Commission from the panel's order. The second issue raised by CWS involves the penalty (1% reduction in rate increase) imposed upon CWS due to inadequate service. In addressing this issue, we note that a Commission decision will stand unless:

> the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions, or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings, or
>
> (4) Affected by other errors of law, or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or
>
> (6) Arbitrary or capricious.

N.C.G.S. § 62-94(b) (1989).

We consider this issue with regard to N.C.G.S. § 62-94(b)(5), whether the decision was supported by "competent, material and substantial evidence." The Commission's panel recommendation of 31 July 1992 was that, due to inadequate service, CWS should be penalized by decreasing the rate of return by 1%. CWS filed exception to the recommended decision on the service issue and asked to be allowed to reopen the hearing to call state and county officials to testify as to the quality of service that CWS provides. This request was denied. Upon review, the full Commission affirmed the panel's finding of inadequate service. CWS appeals this decision, claiming that the Commission did not adequately set out the standard for determining what constitutes adequate service and that the Commission did not tell CWS how to improve its service to meet the Commission's unidentified standard of service adequacy.

Upon review of the entire record, we conclude that the Commission's decision imposing a 1% penalty for inadequate service is not supported by competent, material, and substantial evidence.

CWS has presented evidence that its service met all state and federal requirements. Although a number of complaints regarding the quality of the water furnished were presented by customers at the hearings scheduled throughout the state, these quality and service complaints were made by a small fraction of 1% of the customers, there were no complaints made from fifty of the eighty-nine subdivisions that CWS services, and most of the complaints came from seven subdivisions. Yet the Commission penalized CWS based on its overall service to all customers.

In addition, the Commission failed to satisfy two statutory requirements of Chapter 62 when setting out its order. N.C.G.S. § 62-79 states:

> (a) All final orders and decisions of the Commission shall be sufficient in detail to enable the court on appeal to determine the controverted questions presented in the proceedings and shall include:
>
> > (1) Findings and conclusions and the reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record, and
> >
> > (2) The appropriate rule, order, sanction, relief or statement of denial thereof.

N.C.G.S. § 62-79(a) (1989).

In addition, the "Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order." N.C.G.S. § 62-42(a) (1989). The Commission order at issue does not set forth what service improvements or what repairs should be made, nor does it set forth the basis upon which it determined that water quality and service which meets the requirements of the Division of Environmental Health ("DEH") is inadequate.

In *Utilities Comm. v. Telephone Co.*, 12 N.C. App. 598, 184 S.E.2d 526 (1971), *modified & aff'd*, 281 N.C. 318, 189 S.E.2d 705 (1972), the Court of Appeals reminded the Commission that "[s]pecific and unambiguous factual findings by the Commission are necessary to enable a reviewing court to determine whether the duty imposed by statute [to consider all evidence] has been performed." *Id.* at 612, 184 S.E.2d at 534. This Court has stressed in the past how

STATE ex rel. UTILITIES COMM. v. CAROLINA WATER SERVICE

[335 N.C. 493 (1994)]

important it is that the Commission "enter final orders that are sufficient in detail to enable this Court on appeal to determine the controverted issues. . . . Failure to include all necessary findings of fact and details is an error of law and a basis for remand under N.C.G.S. § 62-94(b)(4) because it frustrates appellate review." *State ex rel. Utilities Comm. v. AT&T Communications*, 321 N.C. 586, 588, 364 S.E.2d 386, 387 (1988). Specifically, we have held that where the Commission finds that poor service lowers the rate of return a company will receive, it must "make a specific finding showing the effect it gave this relevant factor." *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 361, 189 S.E.2d 705, 733 (need specific finding when poor service is used to justify subtraction from original and reproduction costs of plant before ascertaining fair value of plant).

While the Commission here has set forth specific complaints from some customers, the order does not state what CWS is to do to make the service adequate. The order indicates neither in what manner CWS violated the Commission's standards nor what those standards are. CWS presented undisputed evidence that it has complied with the state health standards. No Public Staff witness recommended that CWS be penalized for inadequate service. Nevertheless, the Commission determined that it was not enough that CWS complied with the state health standards and penalized CWS for service inadequacy. We hold that the company must be given specific information as to why its service is inadequate and guidance as to required or recommended corrective actions by the Commission when being penalized for inadequate service and conclude that the order before us is inadequate. We thus reverse the Commission and remand the issue for further consideration.

[4] The third issue raised by CWS involves the Commission's determination of the appropriate figure for determining the capacity of elevated storage tanks. The panel had recommended that a calculation of 400 gallons per day (gpd) per connection be used to determine how much excess capacity existed in the elevated storage tanks of CWS in different systems. The Public Staff appealed the decision of the panel to the full Commission, arguing that the evidence supported a finding of 200 gpd per connection as the correct standard. The full Commission determined that the correct calculation was 200 gpd per connection. CWS appealed the issue to this Court. We conclude that competent, material, and substantial evidence in the record supports the Commission's decision, and we therefore uphold the Commission's decision.

This Court has previously held that the Commission cannot simply substitute the design criteria of another agency as a substitute for its own determination. *State ex rel. Utilities Commission v. Public Staff*, 333 N.C. 195, 207, 424 S.E.2d 133, 140 (1993). However, the Commission may consider another agency's standards when making its own determination. *Id*. If, after considering all the evidence, the Commission then determines that a certain agency's standard is appropriate, the decision will be affirmed on appeal. In the present case, the Commission reviewed the testimony of Mr. W. E. Venrick, chief of DEH's water supply section, and Mr. J. C. Lin, head of DEH's plan review unit, which indicated that the division's policy requires a minimum of 200 gpd per connection, not 400 gpd per connection. The Commission also considered whether 200 gpd per connection was adequate to serve the customers. In reaching its determination that 200 gpd per connection was the correct calculation for determining excess capacity, the Commission noted that CWS owned several systems that provided less than 400 gpd per connection to its customers and that CWS was unable to show that any service problems existed in any of the service areas that provided less than 400 gpd per connection. The Commission also noted that 200 gpd per connection is an adequate standard for elevated storage tanks because while the storage tanks are being required to hold 200 gpd per connection, there is another 400 gpd per connection that is available to the customers through the wells that are required to be able to pump 400 gpd per connection into the storage tank in a twelve-hour period.

CWS argued that there is a statutory requirement of 400 gpd per connection and that CWS relied to its detriment on other Commission decisions which found that 400 gpd per connection is the minimum requirement. We note that there is no formal requirement for elevated storage tanks for nonmunicipal water systems like those owned by CWS. While there is a stated regulation for municipalities, that regulation does not control in this situation. *See* 15A NCAC 18C .0805(c) (February 1991). In addition, CWS has repeatedly sought and received design approvals for water systems with elevated storage capacities of 200 gpd per connection, and there is no evidence that a tank with a service capacity of 200 gpd per connection has been found to be inadequate. As there was competent, material, and substantial evidence presented that the minimum design criterion has always been 200 gpd per connection, the decision of the Commission is affirmed.

[5] The first issue raised by the Public Staff relates to the rate base calculation of the Commission in the case at hand and, in particular, the inclusion of a 35% capacity allowance for future growth. The Public Staff argues that the Commission reached this figure in error or, in the alternative, that the Commission erred because it did not consider the future revenues that would be produced by future customers who create the costs for which the present customers were being charged.

Our review of this issue on appeal is limited to whether the Commission correctly followed requisite guidelines specified in N.C.G.S. § 62-133(c) and based its determination on competent, material, and substantial evidence in light of the entire record. *See Public Staff*, 333 N.C. at 203, 424 S.E.2d at 138. We reverse the decision of the Commission which permitted a 35% rate base capacity allowance because it is not supported by competent, material and substantial evidence. The Commission failed to provide any fact-specific support for determining that a 35% increase is a valid figure and did not follow the "approved practice" of setting out a matching adjustment for pro forma revenues that will be obtained due to the potential increase in customers in the near future. *Id.* at 208, 424 S.E.2d at 141.

In *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E.2d 705, the leading case on this issue, we established that present customers could in fact be assessed costs for future customers when the costs were based on a short-term projection. In *State ex rel. Utilities Comm. v. Carolina Water Service*, 328 N.C. 299, 401 S.E.2d 353 (1991), we held that N.C.G.S. § 62-133(c) "requires the Commission to consider post test period usage of plants as well as costs and revenues." *Id.* at 305, 401 S.E.2d at 356. In *Public Staff*, 333 N.C. 195, 424 S.E.2d 133, we held that an inappropriate "mismatch" resulted when the rate increase was based on a comparison of revenues from present customers, but the costs were determined based on present and future customers. *Id.* at 207, 424 S.E.2d at 141. Thus, while the inclusion of an allowance for costs that will be utilized by future customers in the near future may be assessed the present customers in rate base, the approved practice is to also include the future revenues that will be received from these customers in rate base to "prevent present customers from paying for that portion of a plant that will serve only future customers." *Carolina Water Service*, 328 N.C. at 304, 401 S.E.2d at 355. In *Public Staff*, we noted that the approved practice in

determining excess capacity is to match future revenues and future costs and remanded the Commission's decision, which did not match revenues and costs. We concluded that " 'there must be a limit to the extent to which [ratepayers] can be compelled to pay for providing possible future facilities for future business.' " *Utilities Comm. v. Telephone Co.*, 281 N.C. at 351, 189 S.E.2d at 726 (quoting *St. Joseph Stockyards Co. v. United States*, 11 F. Supp. 322, 329 (W.D. Mo.), aff'd, 298 U.S. 38, 80 L. Ed. 1033 (1936) ), *quoted in Public Staff*, 333 N.C. at 205, 424 S.E.2d at 138-39. " 'The present ratepayers may not be required to pay excessive rates for service to provide a return on property which will not be needed in providing utility service within the reasonable future.' " *Public Staff*, 333 N.C. at 206, 424 S.E.2d at 139 (quoting *Utilities Comm. v. Telephone Co.*, 281 N.C. at 353, 189 S.E.2d at 727).

In this case, the Commission failed to consider future revenues, and its decision to allocate a capacity allowance of 35% is not supported by the evidence. In the past, capacity allowances have been upheld based on evidence of particular annual growth in the subdivision at issue. *Public Staff*, 333 N.C. at 198, 424 S.E.2d at 135. In this case, there is no specific evidence of the customer growth rates in the subdivisions subject to the capacity allowance. The Commission in its order cites no evidence of how much growth is anticipated or how far into the future the planning horizon extends. The only evidence presented by CWS that 35% is a valid figure was the testimony of CWS rebuttal witness Mr. Dopuch, who said that he based his opinion that 35% was valid on the fact that such a figure had been approved by the Commission in the past for a typical residential subdivision. The witness had no personal knowledge that these particular subdivisions would expand by a rate of 35% in the near future.

We conclude that because of the lack of evidence justifying the 35% capacity increase and because the Commission did not consider the future revenue potential, the decision of the Commission is not supported by competent, material, and substantial evidence and may unjustifiably burden present customers. We reverse the decision of the Commission and remand the issue for further consideration.

[6] The second issue raised by the Public Staff relates to the failure of the Commission to include in the total treatment plant cost the original costs and capitalized rehabilitation costs of sewage

STATE EX REL. UTILITIES COMM. v. CAROLINA WATER SERVICE

[335 N.C. 493 (1994)]

treatment plants in the Brandywine Bay, Cabarrus Woods, and Danby systems. The Commission has included the original costs and capitalized rehabilitation costs of these systems in rate base. Without reaching the question of the correctness of the Commission's decision not to include the original costs and capitalized rehabilitation costs in its consideration of the total treatment plant cost, we conclude that the Public Staff cannot prevail on this issue.

CWS purchased the different systems at issue as early as 1986 at a cost well below their original costs. The original costs and capitalized rehabilitation costs stemming from these systems have been included in rate base in their entirety since the systems were purchased. The Public Staff has not appealed to this Court the Commission's decision to include in rate base the original costs and capitalized rehabilitation costs of these plants until the present case. In *In re Application by Carolina Water Service*, Docket No. W-354, Sub 69 (1989) ("Sub 69"), and *In re Application by Carolina Water Service*, Docket No. W-354, Sub 74, 79, 81 (1990) ("Sub 81"), the full Commission addressed the issue of the cost of these plants that would be used in determining the amount to be excluded from rate base as excess capacity. The Commission looked at the original costs and the expansion costs separately, finding that if the original capacity was sufficient to satisfy the customer needs, then the entire expansion cost would be deemed excess capacity and not included in rate base. *Carolina Water Service*, 328 N.C. at 302, 401 S.E.2d at 354. Portions of the Commission's decision in Sub 69 were appealed to this Court, *Carolina Water Service*, 328 N.C. 299, 401 S.E.2d 353; however, the method of calculation of costs in determining excess capacity was not an issue that was appealed. In *Carolina Water Service*, we implicitly approved the calculations of the Commission, affirming the decision. *Id.*

This year, CWS has again included expansion costs in rate base. In calculating the excess capacity, the Commission relied on its calculations in Sub 69 and Sub 81 to determine the total treatment plant cost. The Public Staff now argues that the original costs and capitalized rehabilitation costs should be included in the total treatment plant cost. Without reaching a conclusion on the prudence behind the Commission's calculations, we conclude that the method of calculation as it relates to these particular plants has been made before and that if the Public Staff objects to the separate consideration of the original plant costs and the expansion plant costs, such objection should have been made to this Court

STATE ex rel. UTILITIES COMM. v. CAROLINA WATER SERVICE

[335 N.C. 493 (1994)]

when the procedure was first used for these particular systems. The decision of the Commission in Sub 69 was appealed and heard by this Court, *Carolina Water Service*, 328 N.C. 299, 401 S.E.2d 353, but no objection was made as to the method of calculation. The Public Staff should have appealed this decision within thirty days of the final order that included these particular calculations. N.C.G.S. § 62-90(a). In addition, the same method of calculation for these same plants involving the same original plant cost was used in Sub 81, and no appeal of that decision was made at all. Because the Public Staff did not appeal as to this procedure in a timely manner, we will not address the correctness of the method of calculation of excess capacity for these particular plants. The Public Staff is now bound by the final order of the Commission in Sub 69 and Sub 81 in this regard.

[7] The third issue raised by the Public Staff relates to the inclusion by the Commission of the Mt. Carmel wastewater treatment plant in rate base. It was determined by the Commission that Mt. Carmel was not in service at the end of the test year and, in fact, would never again be in service. On the basis of this evidence, the Commission concluded that the plant should be treated as an extraordinary property retirement and that the unrecoverable costs should be amortized over ten years with the unamortized portion being included in rate base. The Public Staff argues that such a plant is not used or useful; thus, the unamortized costs should not be included in rate base.

Relying on our previous case law, we agree with the Public Staff and conclude that the Commission has committed an error of law and that the issue should be remanded. N.C.G.S. § 62-94(b).

The clear wording of N.C.G.S. § 62-133(b) requires the Commission to determine the utility's rate base by computing the "reasonable cost of the utility's property which is used and useful in providing service to the public, minus accumulated depreciation, and plus the reasonable cost of the investment in construction work in progress." *State ex rel. Utilities Commission v. Thornburg*, 325 N.C. 463, 467 n.2, 385 S.E.2d 451, 453 n.2 (1989) (*"Thornburg I"*). To be included in rate base, the cost must be both reasonable *and* incurred for property that is used and useful in providing service to customers. *State ex rel. Utilities Commission v. Thornburg*, 325 N.C. 484, 491, 385 S.E.2d 463, 467 (1989) (*Thornburg II*). In *Thornburg II*, we held that facilities which are *"excess,* as a matter

of law, . . . cannot be considered 'used and useful' as that term is used in N.C.G.S. § 62-133(b)(1)." *Id.* at 495, 385 S.E.2d at 469. If facilities are not used and useful, they cannot be included in rate base. *Id.* Including costs in rate base allows the company to earn a return on its investment at the expense of the ratepayers. We do not allow such a return for property that will not be used or useful within the near future. *Id.* at 496, 385 S.E.2d at 469. Costs for abandoned property may be recovered as operating expenses through amortization, but a return on the investment may not be recovered by including the unamortized portion of the property in rate base. *Id.* at 497, 385 S.E.2d at 470.

Similarly, in *Public Staff*, we concluded that to allow a company to recover its investment in a plant that at one time was used and useful by allowing the "unamortized balance" of the property to be included in rate base after labeling the property an "extraordinary property retirement" and amortizing the investment over a specific time period allowed a company to recover substantially more than its investment in the property. *Public Staff*, 333 N.C. at 202, 424 S.E.2d at 137. By allowing amortization and inclusion in rate base, the company is allowed to recover its investment in a plant that is not used or useful and to earn a rate of return or profit on any portion of the unused plant that is included in the rate base. There is no statutory authority for including in rate base costs from a completed plant that is no longer used and useful within the meaning of this term as determined by our case law. *Id.*

Concluding that the Mt. Carmel wastewater treatment plant is no longer "used or useful," we hold that no portion of its costs may be included in rate base. The decision of the Commission is reversed, and the issue is remanded for determination consistent with this opinion.

To summarize, we hold: (1) that the issues involving division of gain on sale, disallowance of certain CWS expenses, and the calculation of total treatment plant costs are not properly before this Court for review; (2) that the Commission erred in its assessment of a 1% penalty due to inadequacy of service; (3) that the Commission correctly determined that 200 gpd per connection is the appropriate figure for calculating the excess capacity of elevated storage tanks; (4) that the Commission erred in determining a capacity allowance of 35% for rate base; and (5) that the Commission

incorrectly determined that the unamortized portion of an extraordinary property retirement should be included in rate base. For the reasons stated herein, the order of the Commission is affirmed in part, reversed in part, and remanded to the Commission for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.